## AMERICAN MANUFACTURING COMPANY, Appellant, v. CITY OF ST. LOUIS, Appellant.

### In Banc, December 16, 1911.

1. **TAXATION: Foreign Goods Shipped Into State.  Neither a State nor a municipality thereof has any power to levy an import tax on goods shipped into the United States, nor can the State provide for such an immediate levy after importation as would undoubtedly discourage or prevent importation; but after goods are imported the State assumes the burden of protecting them, and consequently they can be made to bear such reasonable burdens as the State for its support and maintenance may levy.

2. ————: ————: In Original Package.  Goods imported into the United States solely for the purpose of being manufactured by the owner, and still held by him in the original packages in which shipped, not for the purpose of being stored for an advance in price, but solely awaiting their manufacture, are not subject to taxation by the State or a municipality thereof.  A tax levied by the city on jute butts before their manufacture into bagging and while still held by their owner in their original packages solely for the purposes of being manufactured by him, is illegal, because its effect is to discourage or prevent importation, and therefore it is in conflict with the United States Constitution.**

3. ———: **Manufacturer's License: On Goods Sold in Other States: Interstate Commerce.** The city has a right to levy a manufacturer's license on goods of a manufacturing company sold at its city office to citizens of other States. Such license tax does not violate the clause of the United States Constitution giving Congress power to regulate commerce among the States.

4. ———: ———: **On Sale of Goods in One State in Another State: Insufficient Ordinance.** An ordinance of a city of this State authorizing an *ad valorem* tax on all goods, wares and merchandise situated within the limits of the city, and providing for a license tax on sales from the owner's factory in said city only, cannot be held to impose or authorize a tax on sales of goods situated in New York to citizens of Texas made by said owner at the city office. It is, therefore, unnecessary to consider whether, if said ordinance did authorize a tax on such sales, it would be in violation of the interstate commerce clause of the United States Constitution.

Appeal from St. Louis Circuit Court.—*Hon. J. Hugo Grimm*, Judge.

REVERSED AND REMANDED (*with directions*).

*Judson & Green* and *George R. Lockwood* for plaintiff.

(1) Section 10 of article 1 of the Constitution of the United States provides, among other things, that "no State shall, without the consent of the Congress, lay any imposts or duties on imports or exports, except what may be absolutely necessary for executing its inspection laws;" and, therefore, neither the State nor the city of St. Louis can impose a tax, either as a license or property tax, on the jute butts in original packages imported by plaintiff for the purpose of being manufactured by plaintiff into bagging. Brown v. Maryland, 12 Wheat. (25 U. S.) 419; May v. New Orleans, 178 U. S. 496; Steel & Wire Co. v. Speed, 192 U. S. 500; State v. Shapleigh, 27 Mo. 349; 1 Cooley on Taxation, p. 143; Low v. Austin, 13 Wall. 2. (2) The court erred in ruling that the tax imposed upon sales of stock in St. Louis to citizens of other States

and shipped from St. Louis to such purchasers was valid under the ordinance in question. Such sales were transactions in interstate commerce and therefore could not be taxed by either the State or the city. U. S. Constitution, art. 1, sec. 8, par. 3; Brown v. Maryland, 12 Wheat. 419; Robbins v. Shelby County District, 120 U. S. 489; Asher v. Texas, 128 U. S. 129; Brannon v. Titusville, 153 U. S. 289; Stockard v. Morgan, 185 U. S. 127; State v. Caldwell, 187 U. S. 622; Rearick v. Pennsylvania, 203 U. S. 507. Simmons-Crawford Co. v. Atlantic Highlands, 158 Fed. 372. (3) It is immaterial that the tax on sales is called an "occupation tax" measured by the amount of sales, as the city cannot do indirectly what it cannot do directly. Cook v. Pennsylvania, 97 U. S. 566; Robbins v. Shelby County District, 120 U. S. 489; Railroad v. Texas, 210 U. S. 217; Refrigerator Co. v. Kentucky, 199 U. S. 194; 2 Abbott on Municipal Corporation, sec. 408; Kelley v. Rhodes, 188 U. S. 589. (4) The payment in this case was involuntary and having been illegally enforced is a proper subject of recovery by action against the city. Douglas v. Kansas City, 147 Mo. 428; Westlake v. St. Louis, 77 Mo. 47; Brewing Co. v. St. Louis, 167 Mo. 367; Am. & Eng. Ency. Law (2 Ed.), p. 613; Swift v. U. S., 111 U. S. 28. (5) The ruling of the circuit court that the tax on sales did not extend to cases where the property was located outside of the city and State at the time of sale, was clearly correct. If the ordinance could be construed as including such sales it would clearly be invalid. Rearick v. Pennsylvania, 203 U. S. 507; Brannon v. Titusville, 153 U. S. 289; Robbins v. Shelby County, 120 U. S. 489; Cook v. Pennsylvania, 97 U. S. 566; Stockard v. Morgan, 185 U. S. 127; 24 Am. & Eng. Ency. Law (2 Ed.), p. 1022; cases cited supra.

*Lambert E. Walther* and *A. H. Roudebush* for defendant.

(1) The court did not err in rendering judgment for the defendant on account of the tax on imported raw materials, for the reason that the ''original package'' doctrine relates only to goods imported for sale, and where raw materials are imported for manufacture and have reached their destination and become mingled with the general mass of property in the State they are subject to local taxation.  U. S. Constitution, art. 1, sec. 10; Mo. Constitution, art. 10, secs. 1, 11; Brown v. Maryland, 12 Wheat. 419; May v. New Orleans, 178 U. S. 496; Burke v. Wells, 208 U. S. 14; 1 Watson on Constitution, p. 827; 1 Willoughby on Constitution, sec. 265; Brown v. Houston, 114 U. S. 634; Rearick v. Pennsylvania, 203 U. S. 511; Cooke v. Marshall Co., 196 U. S. 261; Austin v. Tennessee, 179 U. S. 349; 2 Willoughby on Constitution, pp. 644, 650.  (2) The mode of determining the amount of an occupation license tax by reference to sales made by the licensee does not affect the validity of the license tax or change its nature, or make it a tax on property. Express Co. v. St. Joseph, 66 Mo. 681; Clark v. Titusville, 184 U. S. 329; Society for Savings v. Coite, 73 U. S. 608; Maine v. Railroad, 140 U. S. 228; Insurance Co. v. New York, 134 U. S. 600; Aurora v. McGannon, 138 Mo. 48; St. Louis v. Railways Co., 210 U. S. 279. The court did not err in rendering judgment for the defendant on account of that portion of the tax based on sales of goods located at the time in Missouri, and shipped thence to other points, but did err in rendering judgment for the defendant for that portion of the tax based on sales of goods located at the time of sale in other States; for the reason that the tax is a lawful license tax on the occupation pursued by the plaintiff in the city of St. Louis, the amount of which is measured by reference to sales in the city of St. Louis,

and is not a tax on the goods, wherever located, nor on interstate commerce. Ficklen v. Tax Dist., 145 U. S. 1; Hatch v. Reardon, 204 U. S. 158; State v. Broadnax, 228 Mo. 53; Broadnax v. Missouri, 219 U. S. 294.

BROWN, J.—This suit was brought to recover $1578.26 taxes paid by the plaintiff to the defendant.

Plaintiff is a foreign corporation, licensed to transact business in Missouri; and between the first Monday in March and the first Monday in June, 1908, maintained an office and operated a factory in the defendant city, for the purpose of manufacturing bagging. Defendant is an incorporated city of this State, containing more than three hundred thousand inhabitants.

Pursuant to the powers enumerated in sections 9856 and 9857, Revised Statutes 1909, the defendant city enacted the following ordinance to raise revenue for its support:

"Sec. 2198. *Ad valorem and additional tax rate— time of payment.*

"There shall be levied and collected on the value of the largest amount of all goods, wares and merchandise stated as aforesaid an *ad valorem* tax of one-fifth of one per centum on the value of all such goods, wares and merchandise, situated within the limits of the city, for municipal purposes. This tax shall be paid to license collector on or before the first day of July in each year, together with the license which shall be paid every year by the merchant, mercantile firm or corporation (in addition to the per centum hereinbefore stated) of one dollar on each one thousand dollars or fractional part thereof, of sales made by such merchant, mercantile firm or corporation, provided that no license shall be issued under the provisions of this artcle for a less sum than five dollars, which sum shall be paid by each merchant, mercantile firm or

corporation doing a business of five thousand dollars or less per annum.''

To enable the defendant city to collect from plaintiff such taxes as it was entitled to under this ordinance, plaintiff made the following return of its property and business for the year 1908:

| RAW MATERIALS. | VALUE. | TAX. |
|---|---|---|
| 1. Imported jute butts in original package, imported by plaintiff for the purpise of being manufactured by plaintiff into bagging | $ 75,855.00 | $  735.79 |
| 2. Domestic goods to be used for like purposes | 11,635.26 | 112.86 |
| 3. Tools, manchinery and appliances | 60,000.00 | 582.00 |
| 4. Merchandise and finished products | 289,041.65 | 2,805.58 |
| Total | $436,531.91 | $ 4,236.23 |

| AGGREGATE AMOUNT OF SALES. | | |
|---|---|---|
| 1. Sales made through office of City of St. Louis, and shipped from stock in said city to points in the State of Missouri | $ 59,624.40 | $   59.64 |
| 2. Sales made through St. Louis office and delivered from stock in St. Louis to purchasers in other states | 553,848.44 | 553.85 |
| 3. Sales made through office in St. Louis and shipped from stock manufactured in New York City and at time of sale in Galveston, Texas | 872,699.55 | 872.70 |
| Total tax on sales | | $1,486.19 |
| Total license tax on property and sales | | $5,722.42 |

In addition to taxes in the sum of $3556.08 which plaintiff concedes to be legal, the defendant through its taxing officers levied and collected from plaintiff upon the aforesaid return, certain items of taxes and licenses, the validity of which is challenged in plaintiff's petition upon the grounds hereinafter named.

1. An item of $735.79 of *ad valorem* taxes upon "imported jute butts in original packages, imported by plaintiff for the purpose of being manufactured into bagging," is challenged on the ground that such jute butts while so held in original packages were not taxable by this State, nor by the defendant as a municipal-

ity thereof, under section 10 of article 1 of the Constitution of the United States, which provides that: "No state shall without the consent of Congress lay any imposts or duties on imports or exports, except what may be absolutely necessary for executing its inspection laws."

2. An item of $553.85 collected as a license tax on goods sold through plaintiff's St. Louis office and delivered from its stock in St. Louis to purchasers in other States is challenged on the ground that said license tax is prohibited by paragraph 3, section 8, article 1, of the Constitution of the United States, granting to Congress the exclusive power "to regulate commerce . . . among the several States."

3. An item of $872.70 collected as a license tax upon goods sold through plaintiff's St. Louis office, but manufactured, shipped and supplied from plaintiff's factory in New York, to purchasers in the State of Texas, and not brought into the State of Missouri, is challenged on the like ground that it is in violation of paragraph 3, section 8, article 1 of the Federal Constitution.

Defendant collected the three items of taxes last hereinbefore mentioned, aggregating $2161.34. Payment thereof being made under duress and to avoid prosecution under defendant's ordinance, and the defendant having received into its treasury $1578.26 of said taxes, this action is brought to recover same.

The circuit court of St. Louis city in which the case was tried, held that the last named license tax, to-wit, $872.70, on goods shipped directly from New York to Texas was invalid, and gave judgment for the plaintiff on that item; but made a further finding that the other two items of taxes complained of were legal; and gave judgment for defendant on those items. From this judgment both parties prosecute their separate appeals to this court.

238 Sup.—18

## OPINION.

I. To defeat the *ad valorem* tax levied upon jute butts in original packages imported from India, plaintiff relies mainly upon the rule of law announced in the decision of the United States Supreme Court in the case of Brown v. Maryland, 25 U. S. 419, declaring invalid an act of a State Legislature which provided for a license tax upon persons engaged in the business of selling imported goods in original packages.

The lack of power on the part of a State or a municipality thereof to levy an import tax on goods shipped into the United States is too clear for controversy. The exclusive power to levy such tax is conferred upon the Federal Government as one of the methods whereby it may raise revenue to execute the numerous powers delegated to it by the Constitution.

The question of how far a State or a municipality of a State may go in levying taxes upon goods imported into the United States without infringing upon the right of the Federal Government, has on numerous occasions been before the courts; and there being no statute law properly defining the respective powers of the States and the Nation in this regard, the courts have seemingly tried to settle such disputes by the application of such rules of reason and common sense as will gurantee to the Federal Government the right to collect its imports unhampered by unreasonable interference on the part of the States and their municipalities, and at the same time accord to the States the right to levy taxes upon imports whenever they lose their identity as such, and whenever such State taxes do not unreasonably discourage importations.

While the Federal Government has the paramount right to regulate the importation of goods, it is apparent that after goods are imported the States assume the task of protecting such property. In other words, when property is imported into a State, the

importer receives the benefits which the laws and governmental machinery of such State afford him in the way of protection to his property from loss by fire, thieves and other destructive agencies; consequently, he must submit to such reasonable burdens as the State for its support and maintenance may levy upon such property.

A State law which would provide for the immediate levy of State or municipal tax upon imported goods as soon as they shall have passed the custom house, would undoubtedly discourage importations and deprive the Federal Government of revenues which it would otherwise receive; and consequently, the Federal law follows imported property into the State and prohibits the levy by the State upon such property, or those dealing therein, of any tax which would prevent or discourage such importation.

The effect of the case of Brown v. Maryland, supra, is to declare that no tax can be levied by the State or a municipality thereof upon imported goods while the same remain the possession of the importer in the original packages in which they were imported; that is, that no tax can be imposed upon such goods by the State until the goods are sold by the importer, or the original packages broken.

However, the subsequent decisions of the Supreme Court of the United States have engrafted many important modifications upon the rule announced in Brown v. Maryland, supra. For instance, imported goods, though still in the original package, may be taxed by a State or municipality of a State whenever the owner of such goods has allowed them to become mixed, or intermingled with the general property of the State. Likewise, when such goods are imported in very small packages ready for use by purchasers, the State may levy a tax on same, or those dealing therein. [May v. New Orleans, 178 U. S. 496; Austin v.

Tennessee, 179 U. S. 343; Cook v. Marshall County, Iowa, 196 U. S. 261.]

Following the spirit of the rulings of our court of last resort in the cases last named, it is apparent that when the importer of goods has used such goods, or applied them to the purposes for which they are adapted or for which they were imported, then such goods immediately become subject to the same burdens of municipal or State taxation as other property not so imported.

In the case at bar, the jute butts were imported for use in manufacturing purposes, and we can see no reason why a tax levied on such property before its manufacture into bagging and while it remains in the original packages would not discourage imporation thereof to the same extent as a tax levied upon a sale in the original package.

Within reasonable limitations, we are of opinion that plaintiff's contention on this proposition is sound law.

While we hold that the jute butts owned and held by the plaintiff in the original packages, for use in its factory, are in a general sense not taxable by defendant, it would be unreasonable to allow plaintiff to import and store such property in this State and hold it exempt from taxation for any longer period of time than is necessary to enable it to manufacture same in the ordinary course of its business.

If the jute butts in question were imported and stored for the purpose of obtaining the benefit of a prospective advance in the price thereof, then the taxes levied thereon are legal. This court is not advised by the record as to the length of time necessary for plaintiff to store and hold jute butts before manufacturing same, nor how often or in what quantities it is necessary for plaintiff to import such raw material to supply its factory. These facts must be ascertained by the trial court. If the jute butts listed by plaintiff

had been, at the date they were assessed, imported and stored for a longer period than was necessary to enable plaintiff to properly supply its factory with such raw materials, then the taxes complained of should be upheld; otherwise they should be declared invalid and the plaintiff allowed to recover on the first count in its petition.

II. The second count of plaintiff's petition is based upon the levy of a manufacturer's license tax upon goods sold by plaintiff from its factory in St. Louis to persons residing outside of this State; and the validity of said tax is challenged on the ground that the ordinance aforesaid purporting to authorize such tax is in conflict with section 8, article 1, of the Federal Constitution, delegating to Congress exclusive power "to regulate commerce . . . among the several States."

The evident purpose of that provision of the Federal Constitution upon which plaintiff relies, is to prevent any State from discriminating against the products of another State; and it was not intended to prohibit a State in which goods are grown or manufactured from placing such reasonable burdens of taxation upon same as are necessary for the support and maintenance of such State.

Clearly no State can legally discriminate in favor of its own products against the products of another State; and a direct or indirect levy by one State of an import tax or embargo upon goods lawfully shipped across its borders from a sister State would be wholly illegal.

In our opinion, it was not the intention of the framers of our Federal Constitution to compel or encourage a State to discriminate against its own citizens in favor of those of another State; and this would be the effect of adopting plaintiff's views. It is not denied that defendant has the right to levy a tax

on the sales made by plaintiff from its factory in this State to citizens of this State, and this tax of course increases the price of said goods so sold to citizens of Missouri; and it necessarily follows that if plaintiff be permitted to sell its goods to citizens of other States without paying such license tax, plaintiff will thereby become enabled to sell its goods outside of the State cheaper than they are furnished to citizens of this State, where its factory and property receive the protection of our laws.

If the State of Illinois levies or permits its municipalities to levy a tax upon the sales made from factories located within its borders, it would only be necessary, under the construction of the Interstate Commerce Law sought by plaintiff, for it to establish a factory in East St. Louis and supply its Missouri customers from such factory, and supply its Illinois patrons from its Missouri factory; and by that method escape taxes upon its sales in both States. We cannot give our assent to a doctrine so unreasonable and unjust; and we therefore hold the trial court properly denied a recovery upon taxes paid on goods shipped from plaintiff's St. Louis factory to citizens of other States.

III. The third count of plaintiff's petition assails the validity of the manufacturers' license tax levied upon sales of goods negotiated through plaintiff's St. Louis office to citizens of the State of Texas. The goods so sold were purchased by citizens of Texas, and shipped from plaintiff's factory in the State of New York directly to the purchasers in Texas. This tax is also alleged to be in violation of the aforesaid section 8 of article 1 of the Federal Constitution.

Upon a careful consideration of defendant's ordinance No. 2198 (hereinbefore set out), we have reached the conclusion that its provisions are only intended to apply to sales from plaintiff's St. Louis factory. This

ordinance is a revenue law, and as such, should be construed with reasonable strictness. [Noll v. Morgan, 82 Mo. App. 112; State ex rel. v. St. Louis County, 84 Mo. 234.]

It will be observed that the first part of this ordinance authorizes the levy of an *ad valorem* tax on all goods, wares and merchandise of plaintiff situated within the limits of defendant city; and the provision for a license tax on its sales following immediately thereafter, refers only to sales from plaintiff's St. Louis stock or factory.

The case of Ficklen v. Shelby County Tax. Dist., 145 U. S. 1, where a tax upon the net commissions of brokers dealing in goods located in other States was upheld; and the case of Hatch v. Reardon, 204 U. S. 152, where a tax upon sales of shares of stock in corporations located in other States was likewise declared valid, are entirely different from the case now at bar. In those cases the statutes authorizing the levy of the tax were sufficiently specific in their terms to embrace transfers of property located beyond the limits of the State attempting to levy the tax.

A sale by a merchant or manufacturer to a purchaser residing distant from the place of sale ordinarily means the delivery of the goods so sold, free on board cars at the vendor's place of business; and we find that a fair and reasonable construction of defendant's ordinance is that it was only intended to cover sales actually completed; and shipments made from defendant city.

Having arrived at this conclusion, it is unnecessary to determine whether or not defendant's ordinance would have been invalid under the Interstate Commerce Law if it had been broad enough to authorize a license tax upon sales negotiated by the plaintiff at its St. Louis office to citizens of other States, where the terms of such sales provided for shipment of the goods from plaintiff's factory located in New York.

The finding of the trial court granting a recovery on the said third count of plaintiff's petition was correct.

It follows that the judgment of the circuit court of St. Louis city should be and the same is reversed to the end that said court may retry the cause and pronounce judgment therein according to the law, as herein announced.

*Valliant, C. J.*, and *Kennish, Graves* and *Lamm, JJ.*, concur. *Woodson, J.*, concurs in paragraph two and dissents from the views expressed in paragraphs one and three; *Ferriss, J.*, concurs in all except paragraph one.

PER CURIAM.—Upon motion of plaintiff, the judgment in this case is modified so as to direct the trial court to enter judgment in favor of plaintiff for $735.79 on account of taxes collected on imported jute butts; and the further sum of $872.70 on account of license taxes collected on sales made by plaintiff through its St. Louis office to citizens of the State of Texas and supplied from plaintiff's New York factories.

The trial court will enter judgment for defendant on the second count of plaintiff's petition covering license taxes collected on sales from plaintiff's office and factories at St. Louis.

Defendant's motion for rehearing is overruled.

*Ferriss* and *Woodson, JJ.*, dissent.