# THE STATE ex rel. AMERICAN MANUFACTURING COMPANY v. GEORGE D. REYNOLDS et al., Judges of St. Louis Court of Appeals.

## In Banc, April 28, 1917.

1. **DURESS: Payment of Taxes.** If the law prohibited the corporation from continuing its business unless it possessed a manufacturer's license, and made each day's continuance of its business without such license a separate offense punishable by heavy fine, and forbade the collector to issue a license until the illegal taxes were paid, and required the collector to prosecute the corporation for continuing its business without such license, a payment of the taxes, under protest, to avoid prosecution and to obtain a right to continue its business, was a payment under duress.

2. ———: ———: **Property Right.** A corporation's potential existence depends on its ability to transact the business for which it was incorporated, and this is a property right; and if a failure to pay illegal taxes will, because of the penalties and inhibitions which the laws impose, prevent a continuance of that business, a payment, to avoid prosecution and to acquire the right to continue the corporate business without molestation, will constitute payment under duress.

3. ———: ———: **Threats: The Law Itself.** If the law under which the license collector was demanding the tax and proceeding to enforce its collection provided that it should "be his duty to prevent any person carrying on any business, object or calling for which such license or license tax is required, without having a license or license receipt for that purpose" and that he should "report to the police court of such city all violations of law or ordinances relating to license and license taxes" and further provided that no manufacturer should continue his business without such license and if he did so he should be liable to a fine of $500 for each day's continuance, the law itself, coupled with the collector's demand that the manufacturer pay the tax as a final and absolute condition to the issuance of the license, constituted a threat to put the manufacturer out of business unless he paid the tax.

4. ———: ———: **Remedy: Dictated by Defendant.** It does not lie in the month of the defendant who has through duress extorted an illegal tax from a manufacturer as the price of his continuing in business, to contend, when the manufacturer sues to recover the amount of the tax thus paid under protest, that his remedy was by writ of mandamus to compel the granting of license upon tender of the tax; for, one who uses his extraordinary powers for pur-

poses of extortion is not privileged to dictate the particular remedy which his victim shall choose from among those which the law affords.

5. ———: ———: ———: **Common Law a Mantle of Justice.** Remedial justice extends itself like a mantle over those things that come within the reason of the law; and when legislative ingenuity devises new plans for the enforcement of its enactments, the common law automatically extends corresponding protection to those who obey them.

6. ———: ———: ———: **State as Extortioner.** If the State proceeds by methods of its own making calculated to compel the taxpayer to yield, whether right or wrong, to avoid an overpowering injury, it has no right to complain if, having the bone of contention in its own possession, it must try the right to it on equal terms.

7. **CERTIORARI: Opinion of Court of Appeals: Judgment Right Despite Conflict.** Although the opinion of the Court of Appeals conflicts with prior rulings of the Supreme Court in certain particulars, it will not be quashed upon *certiorari* if upon good reasons in law the judgment directed by it was right. Notwithstanding the opinion of the Court of Appeals conflicted with the prior rulings of the Supreme Court in holding that the payment of the illegal tax was not made under duress, yet if it correctly decides that, whether or not duress was exercised, the tax cannot be recovered from the collector, its judgment based upon that decision will be upheld.

8. **PAYMENT OF ILLEGAL TAXES: Recovery From Collector.** A suit against the city collector, who is the agent of the State in collecting State taxes, to recover back the amount of a State tax illegally demanded and paid to him under duress, cannot be maintained, if he has already transmitted it to the State Treasury. The Legislature alone can give relief in such circumstances. The rule is that where money illegally collected by color of law still remains in the hands of the collector it may be recovered from him by the party paying it; but if it has been paid over by the collector to the proper authorities, he is no longer responsible for it, though it appears he acted under an authority which was void.

Certiorari.

Motion quashed (in part).

*Barclay & Wallace* for relator.

(1) The judgments of the St. Louis Court of Appeals are beyond and in excess of the jurisdiction of that court and should be quashed, because therein that court did not follow or apply the last previous ruling

and controlling decision of the Supreme Court rendered on the identical facts, in relation to the same relator and its business. Am. Mfg. Co. v. City, 238 Mo. 267. (2) The judgments under review on this writ should be quashed because they are in conflict with the last controlling decisions and rulings of the Supreme Court as to what payments are voluntary when made under protest, "in order to avoid prosecution and continue its business" to officers empowered to enforce penal tax laws. R. S. 1909, secs. 11461, 11617-18, 11646-8; Am. Mfg. Co. v. City, 238 Mo. 267; Westlake v. City, 77 Mo. 47; Bank v. Bank, 244 Mo. 554; Construction Co. v. Hayes, 191 Mo. 301; Loring v. City, 80 Mo. 468; Am. Brew. Co. v. St. Louis, 187 Mo. 367; Am. Brew. Co. v. City, 209 Mo. 600. (3) The said judgments of the St. Louis Court of Appeals should be quashed because in conflict with decisions of the Courts of Appeals on the decisive point on which the learned opinion herein by the St. Louis court has been placed. Voelpel v. Ins. Co., 183 S. W. 681; Niedermeyer v. University, 61 Mo. App. 654; Brown v. Worthington, 162 Mo. App. 508; Link v. Real Est. Co., 182 Mo. App. 531. (4) The judgments herein reviewed as rendered by the Court of Appeals not only misapplied the above-stated law as laid down by this court, but did not apply another settled principle heretofore declared by the Supreme Court and which, properly applied, would have led to a reversal of the judgment in question, notwithstanding Claflin v. McDonough, 33 Mo. 412, on which the Court of Appeals undertook to found its decision. That principle is that moneys illegally obtained by a public officer as a condition to granting a license without which the business of the victim cannot be continued, as in circumstances here disclosed, may, in all cases, be recovered back—being extortion and beyond the power of such officer. Loring v. City, 80 Mo. 468; Maguire v. State Savings Assn., 62 Mo. 344; Brewing Co. v. St. Louis, 187 Mo. 367; Wood v. Telephone Co., 223 Mo. 537.

*E. C. Slevin* for respondents.

(1) The judgment in Claflin v. McDonough, 33 Mo. 412, was clearly controlling upon the respondents and it is the last previous ruling of this court upon the law and facts involved in the case decided by them. (2) There is nothing in Am. Mfg. Co. v. St. Louis, 238 Mo. 267, to indicate that the Supreme Court has taken a broader view than that announced in Claflin v. McDonough, in cases of this character where the suit proceeds against a public officer. (3) While it may be true that unlawful exactions paid under the stress of urgent business necessity, may constitute duress, a mere threat of legal process cannot be so considered, "for the party may plead and make proof and show that he is not liable." Claflin v. McDonough, 33 Mo. 412; Wood v. Telephone Co., 223 Mo. 537. (4) If appellant deemed the exactions to be unlawful, ample remedy was afforded to it by a resort to mandamus. Butler v. Moberly, 132 Mo. App. 172; State v. Alt, 224 Mo. 493.

GRAVES, C. J.—*Certiorari* to the St. Louis Court of Appeals in two cases, wherein the American Manufacturing Company is plaintiff and appellant, and Louis Alt is defendant and respondent. The cases were briefed and argued together in the St. Louis Court of Appeals and disposed of by that court by one principal opinion and a *per curiam* opinion following the principal opinion. In the principal opinion the Court of Appeals thus outlines the case it had before it:

"Plaintiff prosecutes this appeal from a judgment against it on demurrer to its petition. The petition is in three counts. The material averments presenting the question for consideration here are the same in each count and it is, therefore, unnecessary to set forth more than one.

"The first count of the petition is as follows:

"'1. The American Manufacturing Company, plaintiff, states that it was at all times hereafter stated

a corporation duly organized and incorporated under the laws of the State of West Virginia and licensed to do business in the State of Missouri and had at said times in the city of St. Louis an office and factories for the manufacture of bagging and was doing business in the city of St. Louis as a manufacturer; and that defendant, Louis Alt, is and was at said times the License Collector of and for the city of St. Louis, Missouri.

" '2. Plaintiff further states that the greatest aggregate amount of raw materials of plaintiff on hand in the city of St. Louis at any one time between the first Monday of March and the first Monday of June of the year 1908 included jute butts, in the original packages, of the value of $75,855, imported by plaintiff, from foreign countries, for the purpose of being manufactured by it into bagging, and then awaiting manufacture.

" '3. Plaintiff further states that said defendant demanded that plaintiff should pay (in addition to all taxes on all of plaintiff's other raw material, finished products, tools, machinery, and appliances—which plaintiff paid), as a condition to the issuance of its license for the then succeeding year, a sum of money equal to a tax of 17 cents (imposed by the State of Missouri on each $100 of value of the greatest aggregate amount of raw material of plaintiff on hand in said city at any one time between the first Monday of March and the first Monday of June of the year 1908) on each $100 of value of said imported material; and said defendant refused to issue to plaintiff a manufacturer's license unless it paid him said sum amounting to $128.95; and, assuming to act by virtue of the authority vested in said office of License Collector, threatened to have plaintiff prosecuted daily in the courts of this State and daily fined for carrying on in the city of St. Louis without a manufacturer's license the business of a manufacturer; that plaintiff was not authorized to continue its business in said city without a manufacturer's

270 Mo.—38

license from said defendant as said Collector, and each day's continuance in business without such license was a separate offense under the laws of the State of Missouri and ordinances of the city of St. Louis; and said defendant was empowered under said statutes and ordinances to institute prosecutions against plaintiff for each day it continued its business in the city of St. Louis without said manufacturer's license, and it was impossible for plaintiff to continue in business as a manufacturer in said city without said license; and the plaintiff says that because of its liability to and the threat of such prosecutions and the duress thereby created, and the urgent business necessity of the situation, it paid to said defendant, in order to avoid prosecution and continue its business, under protest, said sum of $128.95, and thereupon received from said defendant a manufacturer's license for the then succeeding year; and plaintiff was compelled to make such payment in order to continue in business as a manufacturer in the city of St. Louis.

" 'Plaintiff further states that, under the ordinances of said city of St. Louis, its failure to have acceded to said defendant's demand for the payment of said sum, and secured its license, would have subjected it to the liability of a double assessment of its said property by said Collector for said city's taxes, and also to a fine of five hundred dollars for each day it continued its said business in said city without said license.

" '4. Plaintiff states that at and before the time of the payment of said $128.95 to said defendant he, the said defendant, was advised by plaintiff that said material upon which plaintiff was so required to pay said sum was imported from a foreign country by said plaintiff and was then remaining in original packages awaiting manufacture by plaintiff; plaintiff further states that at and before said time it also notified said defendant in writing that said property was not a subject for taxation, and that same was claimed by plain-

tiff as wholly exempt therefrom; and that it, the said plaintiff, would institute and prosecute suit for the re- covery of said sum so paid thereon.

" '5. Plaintiff further states that said defendant had no right or authority to require the payment of any sum on said imported material and that the ex- action of said sum of $128,95 or any part thereof by said defendant under color of his office was a wrongful exaction and said sum was unlawfully collected from plaintiff by said defendant.

" '6. Plaintiff further states that it paid to said defendant said sum of $128.95 illegally exacted as afore- said on the 19th day of September, 1908, and it prays judgments against said defendant for said sum of $128.95.'

"The court sustained defendant's demurrer to each count of the petition in the view that the taxes were voluntarily paid and not under duress."

In the brief for respondent Alt in the case before the Court of Appeals it is suggested that both parties agreed that there were two grounds averred by that demurrer, *nisi*, thus:

"Appellant therefore properly states the two questions for the consideration of this court:

"First: Were the payments made as disclosed in the two petitions voluntary or under duress?

"Second: If, under duress, is the respondent per- sonally liable for the amounts so paid?"

It is clear that these two questions were in the case. As best we read the Court of Appeals' opinion, it holds that there was no duress, but that even if there was duress, the officer is not individually liable. Con- tentions pro and con will be noted in the opinion.

I. It is argued that the Court of Appeals' opinion conflicts with views expressed by this court in Ameri- can Manufacturing Co. v. City of St. Louis, 238 Mo. 267. The conflict, if there be a conflict, lies within a narrow compass. In the 238 Mo., supra, we had a case wherein the city was sued for

*Duress.*

taxes which it had received, and wherein it was al-
leged that the payment of them had been made through
duress. BROWN, J., in that case assumed as true, with-
out discussing the question of duress. The only men-
tion thereof is in this language:

"Defendant collected the three items of taxes last
hereinbefore mentioned, aggregating $2161.34. Pay-
ment thereof being made under duress and to avoid
prosecution under defendant's ordinance, and the de-
fendant having received into its treasury $1578.26 of
said taxes, this action is brought to recover same."

It is true that the allegations as to duress in that
case are substantially as they are in the record now
before us. However, in that case the plaintiff was
suing the city which actually received and held the
taxes, whereas in the case at bar the suit is not
against the State, which actually received and has the
money, but against the official who collected it and
turned it over to the State. At least in some respects
the two cases are not parallel. But on the simple
question of duress they must be held to be the same.
The pleadings are the same in effect, if not in exact
language. The Court of Appeals in its opinion relies
upon the case of Claflin v. McDonough, 33 Mo. 412,
and says that we did not broaden the rule there an-
nounced in American Manufacturing Co. v. City of
St. Louis, 238 Mo. 267. Whilst we did not fully dis-
cuss the doctrine of duress in 238 Mo., supra, we
have had occasion to refer to that case and to fully
discuss the question. In the case of American Manu-
facturing Co. v. City of St. Louis, 192 S. W. 399, Oc-
tober Term, 1916, of Division One of this court, BROWN,
Commissioner, with a full concurrence of the court,
well said:

"It is admitted in the argument that the levy of
the tax on this important material was in violation of
section eight of article one of the Constitution of the
United States vesting Congress with the power to
regulate commerce with foreign nations, and therefore

void. The only questions remaining in the case for our consideration are: (1) whether this tax was paid under such circumstances of duress or compulsion as entitles the plaintiff to recover it back from the city, and (2) whether, if plaintiff is entitled to recover it, it should have interest on the amount before judgment.

"The appellant says that under the facts shown, the payment of the illegal tax was voluntarily made and that the respondent is not therefore entitled to recover it back. It says that while the doctrine of duress, which formerly required an actual threat of immediate seizure of person or goods, has been broadened somewhat, it does not yet extend to the facts of this case. In that connection it cites Claflin v. McDonough, 33 Mo. 412, an action against the Collector of the City and County Revenue of St. Louis County, to recover money unlawfully exacted and paid as a tax for the purpose of obtaining a merchant's license. The petition alleged 'that plaintiffs, refusing to pay such tax, would have been liable to and were threatened with prosecution by indictment therefor, entailing heavy expense and loss,' and that therefore the plaintiff paid said tax under protest. Upon demurrer, the trial court held that the facts so cited did not show such compulsion as to authorize its recovery on that ground. In sustaining the judgment, this court said (pp. 415-16): 'It is not averred that the defendant had any authority to seize the persons or goods of plaintiffs, or threatened or attempted to do either; but it is averred that they were threatened with an indictment, and they paid the amount to avoid the expense and annoyance of a prosecution. In our opinion, this does not make it a payment under duress. To constitute duress there must be a seizure of the property or arrest of the person, or a threat or attempt to do one or the other, or facts must be stated which tend to show or which warrant the conclusion that such an arrest or seizure could be avoided only by the payment of the tax demanded.' While the facts pleaded in that case fall far short of

constituting such threatened injuries as are shown here, it is contended that because immediate arrest or seizure of property are not among those injuries the necessary duress did not exist.

"It is true that the plaintiff was a corporation and there was no danger that its body would be seized and cast into prison, but its potential existence depended on its ability to transact the business for which it was incorporated. That this constituted property is evidence. That its destruction would work an injury as substantial as the seizure of a bale or two of its manufactured product is also evident. The law under which the license collector was proceeding provided that it should   be his duty to prevent any persons carrying on any business, object or calling for which a license or license tax is required, without having a license or license receipt for that purpose,' and that he should 'report to the police court of such city all violations of law and ordinances relating to license and license taxes.' [R. S. 1909, sec. 9840.] This of itself constituted a threat to put the respondent out of business should he refuse to make the payment which the license collector demanded as a final and absolute condition to the issue of the license. For the purpose of enabling him to perform this duty penalties of a criminal nature were imposed providing for prosecutions from day to day while the manufacturer should attempt to prosecute its business without a license. The refusal to issue the license in itself constituted an assertion by the license collector that it would perform the duties enjoined by the statute and ordinances to *prevent* the respondent from continuing his business, and to this was added the specific threat of daily prosecution. In relation to this same question presented in a very similar case the Supreme Court of the United States in Railway v. O'Connor, 223 U. S. 280, 286, said: 'But even if the State is driven to an action, if at the same time the citizen is put at a serious disadvantage in the assertion of his legal, in this case of his consti-

tutional, rights by defense in the suit, justice may require that he should be. at liberty to avoid those disadvantages by paying promptly and bringing suit on his side. He is entitled to assert his supposed right on reasonably equal terms.'

"It is said that in this transaction the extraordinary remedy by writ of mandamus was available to compel the granting of the license upon tender of the amount due. So in case of arrest or levy under void process are *habeas corpus* or replevin. But it does not lie in the mouth of one who uses his extraordinary powers for purposes of extortion to dictate the particular remedy which his victim shall choose from among those which the law affords him. Remedial justice extends itself like a mantle over those things that come within the reason of the law, and when legislative ingenuity devises new plans for the enforcement of its enactment, the common law automatically extends corresponding protection to those that obey them. If the State elects to proceed by an action which places it upon an equality before the law with the tax payer, justice may be done to both alike in its prosecution and defense; but if it proceeds by methods of its own making calculated to compel the taxpayer to yield, whether right or wrong, to avoid an overpowering injury, it ought not to complain if, having the bone of contention in its own possession, it must try the right to it on equal terms.

"The city demanded the tax and refused to issue the license without its payment in its capacity as a governmental agent of the State. The refusal of the license amounted to an assertion that it would prevent the respondent from doing business until the unlawful demand should be complied with and for that purpose use all the means provided by its charter and ordinances so far as necessary to accomplish that result. It held in its hands the power of the executive as well as of the judicial department of the State Government for that purpose. The respondent could resist only in the courts, where, in theory at least, he would stand

upon terms of equality before the law . Such equality demanded that he should not be required to place his hand in his adversary's mouth before proceeding with the contest. To avoid this he adopted a method which recommends itself for its fairness. _He placed the money in the hands of the city that the interest of the public might not be imperiled while he tested his right. This is the method of which Judge Cooley in his splendid treatise on Taxation (3 Ed., p. 1506) says: 'Any payment is to be regarded as involuntary which is made under a claim involving the use of force as an alternative; as the party of whom it is demanded cannot be compelled or expected to await actual force; cannot be held to expect that an officer will resist after making a demand . . . It is sufficient if the circumstances are such that the waste and expense can be avoided only by payment,' and the author cites a large number of cases fully sustaining his position, to which those curious for further information can easily refer.''

Our learned Commissioner has so well expressed what we had in mind in the case reported in 238 Mo., supra, that we use his language in preference to our own. It but illustrates the assumption of duress in our case reported in 238 Mo. l. c. 273. It discusses the 33rd Mo., relied upon by our brothers of the Court of Appeals. In so far as that court announces in its opinion that the facts pleaded failed to show duress it conflicts with the views of this court. Whether its judgment is wrong and should be quashed is another question. This because there is another live issue left in the case, which matter we take up next.

II. In view of the later discussions by this court. we have no doubt that the facts in this case (the case decided by the Court of Appeals) constituted such duress as would render the payment of the tax involuntary and under duress. Besides the case quoted from, supra, we have reached a like conclusion in Simmons Hardware Co. v. City of St. Louis, 192 S. W. 394, decided at October term, 1916, in Division No. One. We take it,

however, that where the judgment and record of a Court of Appeals is before us upon writ of *certiorari* we may say (as we have said in paragraph I, supra) that the opinion conflicts, in certain particulars with previous opinions of this court, and yet say that the judgment directed by the opinion should not, be quashed, if we find good reason in law for so saying. It is upon this theory that we take up the second branch of this case.

*Recovery of Tax Transmitted to State Treasury.*

The tax involved herein is a State tax, and we must take judicial knowledge of the fact that in due course of law it has been paid by Mr. Alt, the collector, into the State Treasury. The question thus arises, is a revenue collector for the State (and such was Alt's position: State ex ·inf. v. Koeln, 192 S. W. 748, in the performance of his conceived duties under the law, liable personally or upon his bond for taxes which he has collected and turned over to the State, under the species of duress found in this case. We can well say, as in American Manufacturing Co. v. City of St. Louis, 238 Mo. 267, we did say, that the party for whose benefit the unwarranted tax· was collected and into whose treasury it went, should refund from that treasury the fund wrongfully collected. But that is not this case. In the 238 Mo., supra, we were making the city return that which it wrongfully received. It must be remembered that the jute butts involved in that case, as also in this, was not all the taxable property of the American Manufacturing Co. This property was but one item of the many. The collector was collecting at least a claim that was for the most part valid and fully valid as he thought and insisted. In the collection of this tax the collector in the one case was the agent for the city and in the other the agent for the State. In, this kind of a situation, we think the rule announced in Lewis County v. Tate, 10 Mo. l. c. 651, is applicable. It is there said:

"The money thus collected was paid, over into the county treasury. Whatever may be the liability of the

county, and of this we are not authorized to give any opinion, it is clear that the collector is not liable. Where money is paid to an agent, for the purpose of being paid over to his principal, and is actually paid over, no suit will lie against the agent to recover it back.''

In Mechem's Public Offices and Officers, sec. 694, it is said:

'' Where money illegally collected by color of law still remains in the hands of the collector it may be recovered from him by the party paying it, but if it has been paid over by the collector to the proper authorities, he is no longer responsible for it, though it appears that he acted under an authority which was void.''

In Cooley on Taxation (3 Ed.), p. 1482, it is further said:

''But in general, if the money, though actually collected by compulsion, is paid over to the proper receiving officer before suit brought, the collector is protected, and this principle has been applied to cases in which the officer's authority was void for unconstitutionality or other reason.''

This rule is supported by many cases found cited under the text, and we think it the safe rule. Of course, if the money had been in the hands of the collector at the institution of the suit, a different rule might have applied. But it had long since reached the State Treasury. To hold a collector responsible individually would be a harsh rule and one which we do not care to follow. The Legislature, upon proper application, would no doubt reimburse the plaintiff from the State Treasury.

We do not agree to the opinion of the Court of Appeals in so far as it says that there was a voluntary payment of these taxes, but the judgment entered by that court is a proper one and should not be quashed. The Constitution makes the opinion of the court a part of its record, and we will quash such portion of its record for the reason assigned in our para-

graph one, but will permit its judgment to stand, because for the right party. It is so ordered. All concur, except *Williams J.*, not sitting, and *Bond, J.*, who dissents on ground of jurisdiction only.