Segfried Construction Company, Inc., Plaintiff, *v.* The City of New York, Defendant.

Municipal Court of the City of New York, Borough of Manhattan, First District, March 24, 1925.

Taxation — special and local assessments — action to recover assessment against plaintiff's property in city of New York for paving street on ground of illegality of assessment — plaintiff not barred from recovery because payment was voluntary — payment under duress — contractor obligated to construct pavement and maintain street in repair for period of five years — portion of contract price represented cost of maintenance of street in repair — under Greater New York charter, § 948, only cost of original pavement can be charged to abutting owners — obligation imposed on contractor to keep street in repair vitiated contract — assessment void and illegal — plaintiff not required to prove paving and maintenance costs within meaning of Greater New York charter, § 962.

A property owner in an action to recover an assessment against real property on the ground that said assessment was illegal is not barred from a recovery because the payment was voluntary. The fact that the assessment was regular on its face constitutes a cloud upon the property owner's title and subjects him to penalties, and the risk of a sale of his property upon default in payment constitutes a duress under pain of which payment was made.

A street paving contract which obligates the contractor not only to construct the pavement, but within a period of five years to " repair and make good * * * all disintegrations, cracks, bunches, defects, open joints * * * which shall occur at any time in the pavement " is illegal and void, within the provisions of section 948 of the Greater New York charter under which only the cost of the original pavement can be charged to abutting owners, since the city exceeded its powers in assessing against the property benefited the cost of paving and maintaining the street. Since the said contract is tainted with illegality, it is void in its entirety, an assessment predicated thereupon is illegal, and plaintiff is entitled to judgment in an action to recover the amount paid under the assessment.

Plaintiff is not required, within the meaning of section 962 of the Greater New York charter, to prove what portion of the contract price was paid for and represents the value of the contractor's obligation to keep the streets in repair, since the said section is limited to instances where the illegality is chargeable only to the excessiveness of the assessment rather than to where the illegality taints the transaction *in toto, ab initio.*

Action to recover assessment against property for paving street on ground that said assessment was illegal.

*Walter W. Martin*, for the plaintiff.

*George P. Nicholson, Corporation Counsel* [*Charles W. Mills* of counsel], for the defendant.

PRINCE, J.:

The plaintiff owns the property at the southeast corner of One Hundred and Sixty-ninth street and Haven avenue, in the city of New York. It paid the defendant, the city of New York, $206.18, the amount of an assessment levied against its property for the paving of Haven avenue, between One Hundred and Sixty-ninth and One Hundred and Seventieth streets. It claims that the assessment was illegal and seeks to recover this payment. If the assessment was illegal, the plaintiff is not barred from a recovery because the payment was voluntary. The assessment was regular on its face, constituted a cloud on plaintiff's title, subjected it to penalties and interest and the risk of a sale of its property upon default in payment. These conditions constituted a duress under pain of which the payment was made.

On April 8, 1921, after proceedings regularly had, the board of estimate and apportionment of the city of New York adopted a resolution authorizing the president of the borough of Manhattan to regulate, reregulate, grade and regrade, curb and recurb, and flag and reflag, with a permanent sheet asphalt pavement on a concrete foundation, Haven avenue between One Hundred and Sixty-ninth and One Hundred and Seventieth streets. The borough president, on October 13, 1921, entered into a contract with the Asphalt Construction Company for this pavement. It is claimed that this contract, and the assessment made against the property deemed to be benefited for the money expended thereunder, are illegal and void. That contract obligated the contractor not only to construct the pavement, but within a period of five years to " repair and make good * * * all disintegrations, cracks, bunches, defects, open joints * * * which shall occur at any time in the pavement."

Clearly, a portion of the contract price represents the value of the undertaking of the contractor to so maintain and keep in repair the pavement during the period of five years after completion. The contract does not, however, indicate what portion of the consideration is attributable to the construction of the pavement, and what portion for the repair during the five-year period of maintenance. It provides that ninety per cent of the contract price shall be paid upon completion of the work, and that the remaining ten per cent shall be retained and one-fifth thereof paid to the contractor at the end of each year during the period

**624** Segfried Construction Co., Inc., *v.* City of New York.

Municipal Court of New York, March, 1925.        [Vol. 124]

of maintenance. This would seem to indicate that the cost of maintenance was ten per cent of the contract price, but it is insufficient to predicate such a finding thereon.

Under the provisions of section 948 of the Greater New York charter, only the cost of the original pavement can be charged to the abutting owners. The city at large must pay the expense of keeping the pavement in repair. After the pavement was completed and accepted by the city, the board of assessors of the city levied and confirmed an assessment against the abutting owners for the entire cost to the city under this contract, and plaintiff's share was $200, which, with interest, amounts to $206.18, which the plaintiff paid under compulsion of law and to recover which this action was brought.

But for the decision of the Court of Appeals in the case of *People ex rel. North* v. *Featherstonhaugh* (172 N. Y. 112), it would be clear that the city exceeded its powers in assessing against the property benefited the entire cost of paving and maintaining this street. The defendant did not prove what portion of the contract price represents the cost of paving. The contract being indivisible and tainted with illegality, is void in its entirety, and an assessment made thereunder is with equal taint.

The case of *People ex rel. North* v. *Featherstonhaugh (supra)* is not in point. That was also a paving case. The contractor guaranteed that he would keep the pavement in repair for a period of eight years, and it was held that that provision was not in contravention of the prohibition that the cost of maintenance shall not be charged to the abutting owners, on the theory that that undertaking was nothing more than a warranty of good workmanship and fitness of material, and that the period of maintenance was no longer than the ordinary durability of the pavement when laid with proper material and workmanship. The Court of Appeals, through Haight, J. (at p. 124), says in part as follows: "There does not appear to be any controversy that the asphalt pavement, properly constructed with proper material upon a concrete base, will remain in good condition for the period named in the specifications, or even for a longer time. And we think the repairs required by the contract have reference to making good the imperfect work done, or the defective material used therein. In other words, that it is in effect a guaranty as to the quality and character of the pavement. If we are correct as to this construction of the specifications, it follows that no additional burden was imposed upon the abutting property owners by reason of the eight-year requirement."

Thus it is apparent that included in the record in the *North* case was evidence that, had the pavement been properly con-

structed, it would not have developed the defects during the period of maintenance, which the contractor agreed to repair at his own expense. In other words, it appeared affirmatively in the *North* case that, in effect, the contractor assumed no obligation beyond the construction of a proper pavement, because if properly con-structed, there would be no repairs during the maintenance period.

In the case at bar there is no such proof, and the obligation assumed by the contractor is beyond that of a mere warranty. It undertook to repair " all disintegrations, cracks, bunches, defects, and open joints." It is not intimated that such defects would not develop within a five-year period after completion notwithstanding the most perfect workmanship and material. The inference to be drawn from this contract, in the light of everyday experience, is that the contractor assumed *more* than to make good those imperfections developing *only* from initially imperfect work or material. It is common knowledge that " disintegrations, cracks, bunches, defects and open joints " develop in our city streets which are subjected to strains from heavy traffic and ever-increasing building operations, notwithstanding the utmost care in the use of material and workmanship in the original construction. To provide for the repair of these defects, the city secured the obligation of the contractor to make good, but for that the city, and not the adjacent owners, must pay.

I find that embraced in the contract under consideration, and included in the price paid by the city to the contractor is the cost of maintaining the street in repair, after completion, that that obligation vitiated the contract and that the assessment imposed on plaintiff's property was void and illegal and that the board of assessors was without jurisdiction or authority to levy or confirm that assessment. (See *Bradshaw* v. *City of Jamestown*, 125 App. Div. 86.)

In that case the court said (at pp. 87–88), in part as follows: " The charter only requires the cost of the original pavement to be paid by the abutting owners, leaving the city at large to bear the expense of keeping the pavement in repair.  *  *  *.  In the *Featherstonhaugh* case it was made to appear that, with proper material and workmanship, the pavement would remain in good condition for at least the period named in the specifications. Here there is no such proof."

There remains only to be considered section 962 of the said charter, which provides that " No court shall  *  *  *  reduce any assessment in fact or apparent, whether void or voidable, on any property for any local improvement, otherwise than to reduce any such assessment to the extent that the same may be shown by

parties complaining thereof to have been in fact increased in dollars and cents by reason of fraud or substantial error * * *.''

The city contends that it was incumbent, under this section of the charter, upon the plaintiff to prove what portion of the contract price was paid for and represents the value of the contractor's obligation to keep the street in repair, and that the plaintiff having failed to make such proof, notwithstanding the illegality of the contract, the plaintiff is without relief.

I do not so construe this section of the charter. This is not a case of fraud or error in assessment, requiring correction by a proper abatement, proof of which must be made by the party complaining. The contract for the paving and repairing was void *in limine.* No rights accrued to the city therefrom, save, of course, that the city might have assessed plaintiff's property to the extent of the value of the pavement. I am of the opinion that section 962 of the charter must be limited to cases where the illegality is chargeable only to the excessiveness of the assessment, and not to a case like the one under consideration where the illegality taints the transaction *in toto, ab initio.* (See *Pell* v. *City of New York,* 31 Misc. 664.)

Judgment for the plaintiff in the sum of $206.18.