ARTHUR T. BRINK, Trustee, v. KANSAS CITY, MISSOURI, Appellant.—
No. 39794.—198 S. W. (2d) 710.

Division One, December 9, 1946.

Rehearing Denied, January 13, 1947.

*David M. Proctor,* City Counselor, *Benj. M. Powers,* Associate City Counselor, and *John J. Cosgrove,* Assistant City Counselor, for appellant.

862

*Donald W. Johnson, Hale Houts* and *Hogsett, Trippe, Depping & Houts* for respondent.

864

BRADLEY, C.—Action for money had and received. The trial court directed verdict for plaintiff for $31,527.98, including interest. Verdict was returned as directed and judgment entered thereon. Motion for a new trial was overruled and defendant appealed.

March 14, 1939, the J. J. Pryor Construction Company was awarded the contract for the construction of the second section of the Brookside sewer in Kansas City. Construction was completed July 14th; accepted July 19th; taxbills in the sum of $132,015.60 were issued to the contractor September 25th. August 14, 1939, C. A. Ruckels, property owner in the sewer district, for himself and all similarly affected, filed suit to cancel the taxbills on the ground that they were contaminated by fraud and were void. November 5, 1941, the trial court in that case held the taxbills valid and the cause was appealed to this court. July 6, 1943, this court held that the taxbills were void. The fraud alleged and shown in the Ruckels case was a conspiracy between city officials and certain alleged favored contractors to eliminate competitive bidding and to monopolize and control the letting of all contracts for city public works and improvements. See Ruckels et al. v. Pryor et al., 351 Mo. 819, 174 S. W (2d) 185.

The present case is to recover back with interest what was paid on the taxbills before the decision by this court in the Ruckels case, and plaintiff is the assignee of those who paid. There are several hundred counts in the petition; one on each taxbill involved. The names of the respective assignors are stated in the respective counts and the amount paid on each taxbill given. The petition alleges the various steps taken by the defendant in the formation of the sewer district, and the construction of the sewer, and the issue and delivery of the taxbills to the contractor. Plaintiff, after so pleading and after pleading the facts of the fraud and conspiracy, alleges that thereby "defendant city knowingly and willfully impressed a wrongful, illegal

and fraudulent lien upon the lands and titles of plaintiff's assignors and induced and by the duress of said liens coerced and exacted from assignors the monies paid by them to defendant city in payment of said special tax bills, which assignors would not have paid except for the wrongful and inequitable conduct, frauds, imposition and duress on the part of defendant city.'' If a taxbill was not paid in 30 days from date of issue, it then became payable in four equal annual installments with interest at seven percent until maturity, and eight percent thereafter.

The defense relied upon may be summarized as follows: (1) That plaintiff's assignors did not pay under duress, but paid voluntarily; (2) that defendant refused to issue the taxbills until directed to do so by a peremptory writ of mandamus from the circuit court; (3) that defendant paid to the contractor the money collected on the taxbills and does not have in its hands the money plaintiff seeks to recover; and (4) that the plaintiff's assignors got value received in that the sewer was well constructed and at a reasonable cost and was a needed benefit.

To support the contention that plaintiff's assignors paid under duress and can recover back plaintiff cites cases from our own and other jurisdictions. Among the cases cited are these: St. Louis Brewing Assn. v. City of St. Louis, 140 Mo. 419, 37 S. W. 525, 41 S. W. 911; Mississippi Valley Trust Co. v. Begley et al., 298 Mo. 684, 252 S. W. 76; State ex rel. American Mfg. Co. v. Reynolds et al., 270 Mo. 589, 194 S. W. 878; Atchison, Topeka & Santa Fe Ry. Co. v. O'Connor, 223 U. S. 280, 32 S. Ct. 216, 56 L. Ed. 436, Ann. Cas. 1913C, 1050; Adrico Realty Corp. v. City of New York, 250 N. Y. 29, 164 N. E. 735; Peyser v. Mayor of New York et al., 70 N. Y. 497; Segfried Construction Co. v. City of New York, 209 N. Y. S. 429; Effell Realty Corp. v. City of New York, 299 N. Y. S. 373; Underwood Typewriter Co. v. Chamberlain, 92 Conn. 199, 102 Atl. 600; Joannin et al. v. Ogilvie et al., 49 Minn. 364, 52 N. W. 217; Tozer v. Skagit County, 34 Wash. 147, 75 Pac. 638; Blanchard et al. v. City of Detroit et al., 253 Mich. 491, 235 N. W. 230.

The St. Louis Brewing Association case was to recover back from the city an amount plaintiff was required to pay for water in excess of the amount lawfully due. Plaintiff owned 17 separate breweries in the city and all used city water. If the charges for the water used were determined by the rate applicable to the number of gallons used at each brewery then the total amount payable was much more than if the charges were determined by the rate applicable to the total number of gallons used at all the breweries. The City contended that under the water rate ordinance charges should be determined by the amount of water used at each separate brewery. The Brewing Association contended that the charges should be determined by the total amount of water used. An ordinance provided that if a water con-

sumer refused to pay the prescribed charge for water used, the water would be turned off. Plaintiff was entirely dependent on the city water for operations, and to avoid having the water turned off paid as the city demanded and sued to recover back. It was held that payment under the circumstances was compulsory and recovery was permitted.

The Begley case, supra, was a suit on a promissory note. The defendants were Edith Ruth Begley, George Begley and Effie M. Ruth. The defense was that the signatures of the defendants on the note were obtained by a threat to prosecute for forgery George Begley, Jr., husband of Edith, son of George and son in law of Effie. In that case the court, after reviewing many cases, said [298 Mo. 1. c. 695]: "The above cases show that the law in this state is that threats of personal injury or criminal prosecution and imprisonment as formerly held by the English and some American courts are no longer required to make out legal duress, but that each case stands on its own heels, and if the obligation in question was incurred by reason of the threatened action or conduct of the party obtaining the contract to expose the other party or his near relative by blood or marriage to deep disgrace, or himself to serious financial loss or injury to his business or property under distressing circumstances, which an ordinary suit at law or equity might be inadequate to remedy, legal duress exists, provided the triors of the fact, whether court or jury, believe that by reason of such threatened action the will of the party entering into the obligation was overcome, and but for such threatened action or conduct he would not have entered into such obligation. And this is the modern rule generally in this country."

State ex rel. American Mfg. Co. v. Reynolds et al., supra, was in certiorari to quash the opinion of the St. Louis Court of Appeals in American Mfg. Co. v. Alt, 184 S. W. 1167. The plaintiff was a manufacturer in St. Louis; Alt was city collector. The collector refused to issue to plaintiff a license to operate for the ensuing year unless plaintiff paid $128.95 tax on imported raw material held by plaintiff. The collector threatened, if plaintiff did not pay the tax, to have plaintiff prosecuted daily and daily fined, as the law provided, for carrying on a manufacturer's business without a license. Plaintiff alleged: "That, under the ordinances of said city of St. Louis, its failure to have acceded to said defendant's demand for the payment of said sum and secured its license would have subjected it to the liability of a double assessment of its said property by said collector for said city's taxes, and also to a fine of $500 for each day it continued its said business in said city without said license."

The trial court sustained a demurrer to the petition and the court of appeals affirmed. The court of appeals said: "The court (trial court) sustained defendant's demurrer to each count of the petition in the view that the taxes were voluntarily paid and not under duress.

It is argued that this was error, but the question presented ▓▓▓ appears to be settled by the judgment of the Supreme Court in a similar case in Claflin et al. v. McDonough, 33 Mo. 412." Certiorari was granted and this court, in banc, after reference to the Claflin case, said [194 S. W. 1. c. 880]: "In view of the later discussions by this court, we have no doubt that the facts in this case (the case decided by the Court of Appeals) constituted such duress as would render the payment of the tax involuntary and under duress."

The O'Connor case, supra [223 U. S. 280] was an action to recover for back taxes levied under an unconstitutional Colorado statute. In the O'Connor case the court said [223 U. S. 1. c. 286]: "But even if the State is driven to an action, if at the same time the citizen is put at a serious disadvantage in the assertion of his legal, in this case of his constitutional rights, by defense in the suit, justice may require that he should be at liberty to avoid those disadvantages by paying promptly and bringing suit on his side. He is entitled to assert his supposed right on reasonably equal terms. See Ex Parte Young, 209 U. S. 123, 146. If he should seek an injunction on the principle of that case and of Western Union Telegraph Co. v. Andrews, 216 U. S. 165, he would run the same risk as if he waited to be sued."

In the Adrico Realty Corporation case, supra (250 N. Y. 29), the plaintiff paid an illegal paving tax which was a lien upon his property affected, and then successfully sued to recover back. In ruling the case the court used the following language [164 N. E. 1. c. 735]:

"An action in equity might have been maintained to vacate the assessment as a lien upon the land, and thus remove a cloud upon the title. Strusburgh v. Mayor, etc., of City of New York, 87 N. Y. 452. Was the plaintiff obliged to resort to this remedy, and was it the only relief? I think not. We must not shut our eyes to the facts. Litigation, even on the equity side of the court, is in these modern days long delayed. Months, if not years, elapse before a case can be reached for trial. Here was a case where the validity of the assessment depended upon oral testimony, the outcome of which might at best be uncertain. In the meantime, a penalty of 7 per cent was running on the amount of the assessment. If the plaintiff should lose on the question of fact, it would be obliged to pay this penalty, as well as all the other incidental expenses and penalties which had accrued under the charter in the meantime. To relieve itself of this uncertainty and this liability created by an assessment which might possibly be void when the facts were ultimately established, the plaintiff paid the assessment and stopped the running of the penalty." Other New York cases cited are to the same effect. The same rule obtains in other jurisdictions.

Analogous in principle, we think, to the situation here is what is said in 17 Am. Jur., p. 880, Sec. 8, as follows: "In those states which

have adopted the more modern view of duress, another new field has arisen under the principles of duress, which might be termed as 'duress by a public utility.' As a result of this enlargement of the field of duress, in a number of instances the courts have applied to payments made to companies furnishing power or the like, the principle that a payment made to one with no legal right to receive it, and made to prevent injury to the payer's business or property, is considered as made under duress, and may be recovered from the party receiving it. This principle of duress is based on the theory of duress of property, since it is tantamount to coercing a payment by one not legally entitled thereto from another who must make such payment or suffer losses to his business or property."

To support the contention that the payments on the taxbills were voluntary and not under duress defendant also cites cases from our own and other jurisdictions. Among the cases cited are: Claflin et al. v. McDonough, 33 Mo. 412, mentioned supra; Franke et al. v. City of St. Louis (Mo. Sup.), 249 S. W. 379; Wolfe v. Marshal, 52 Mo. 167; Robins v. Latham, 134 Mo. 466, 36 S. W. 33; Pritchard v. People's Bank of Holcomb, 198 Mo. App. 597, 200 S. W. 665; Wood v. Kansas City Home Telephone Co., 223 Mo. 537, 123 S. W. 6; Allison v. Tucker et al. (Mo. App.), 170 S. W. (2d) 963; Baldwin v. Scott County Milling Co., 343 Mo. 915, 122 S. W. (2d) 890; Interstate Department Stores, Inc., v. Henry, 224 Wis. 394, 272 N. W. 451; Southern Service Co. v. Los Angeles County, 15 Cal. (2d) 1, 97 Pac. (2d) 963; Newcomb v. Davenport, 89 Iowa 291, 53 N. W. 232; Brunson v. Board of Directors of Crawford County Levee Dist., 124 Ark. 424, 153 S. W. 825.

The Claflin case, supra, was against a county tax collector to recover back the amount paid by plaintiffs for merchants' license. The collector demanded payment; plaintiffs contended that the license tax was illegal and unauthorized. The collector threatened prosecution for dealing as merchants without a license if payment was not made. Upon such threats payment was made under protest. The law under which the tax was levied was later declared unconstitutional and void, and plaintiffs sued to recover back the tax paid on the theory that it was paid under duress. It was held that they could not recover. In the opinion it is stated that the petition contained no allegation of fraud and that the only question was whether the facts stated constituted payment under duress. It is stated in the opinion that it was not alleged that the collector had any authority to seize the person or goods of the plaintiffs, or that he threatened or attempted to do either, but that it was alleged that the plaintiffs were threatened with an indictment, and that they paid the amount "to avoid the expense and annoyance of a prosecution." The court held that "to constitute duress there must be a seizure of the property or arrest of the person, or a threat or attempt to do one or

the other, or facts must be stated which tend to show or which warrant the conclusion that such an arrest or seizure could be avoided only by the payment of the tax demanded."

The Franke case, supra, was to recover back from the City of St. Louis money paid upon void special assessments made against plaintiffs' lands for establishing, opening, and widening certain streets. The assessments were authorized by an ordinance and were liens upon the lands affected. A suit was brought and the assessments were held void. Albers v. City of St. Louis, 289 Mo. 543, 233 S. W. 210. The plaintiffs claimed that they paid under such circumstances as to constitute duress in that the amount of the assessment lien was 27 percent of the value of the property and that a sale of the property was being negotiated, but could not be closed without paying off the assessments, and that "to avoid the accumulation of penalties they paid to the city the full amount of the illegal tax." It was held that plaintiffs did not pay under duress and that they could not recover. The court said: "Two other courses at least were open to the appellants. They might wait for the institution of suit to collect the tax, and interpose the invalidity of the ordinance as a defense, or proceed by an action in the nature of a suit in equity to have the cloud removed from their title. They elected to pay, and the question is whether, by the act of payment, they created a cause of action in their own favor to recover back the money." Then the court went on to say:

"In this case there is no question that the tax was paid with a full knowledge of all the facts. There is nothing in the petition to indicate that the plaintiffs were ignorant of the passage of the ordinance under which the tax was assessed, the fact that it had been assessed, its amount, and all the particulars of the proceeding. The law charged them, as well as every other citizen of St. Louis, with knowledge of the ordinance. That they knew that it had been assessed and its exact amount necessarily flows from the act of payment. That they knew the purpose of the proceeding in which it was done is not and cannot be denied, for it appears upon the face of the proceedings. The only thing that they claim not to have known is the invalidity of the ordinance, and this was a pure question of law. If there was any fraud in the matter, it existed in the exercise of the power which the ordinance purported to confer, and, had its passage been within the power of the city, there would have been no fraud."

It will not be necessary to review other cases cited by defendant. Those in this State to the point are based on the Claflin case. But as we construe, the Begley case, in effect, overruled the Claflin case on the necessary requirements to constitute duress. We quote, supra, from the Begley case, but in that case the court further said [298 Mo. l. c. 697]: "The case of Claflin v. McDonough, 33 Mo. 412, 84 Am.

Dec. 54, where plaintiffs were denied recovery of an illegal license tax which they paid because they were threatened with prosecution by indictment, would seem to be contrary to the ruling of this court in the cases of Simmons and American Mfg. Co. v. City of St. Louis (Mo. Sup.), 192 S. W. 394, 399, and State ex rel. v. Reynolds, 270 Mo. 589, 194 S. W. 878, 879, 880, and is much weakened if not, in effect, overruled by the latter.''

Also, we might say here that Baldwin et al. v. Scott County Milling Company, supra, cited by defendant, was reversed by the supreme court of the United States. See 307 U. S. 478, 59 S. Ct. 943, 83 L. Ed. 1409. In that case a railroad company had paid an award of damages to a shipper made by the Interstate Commerce Commission. The award was made on the theory that the rates charged the shipper were excessive. It was later determined that the shipper was not entitled to the award, and the railroad company (the trustees) sued to recover back. This court held [122 S. W. (2d) 892] that recovery could not be had, and that ruling was reversed, as stated, by the supreme court of the United States.

In the brief defendant concedes that there is "such a thing" as business duress as indicated in the St. Louis Brewing Association case, the American Manufacturing Company case, and State ex rel. American Mfg. Co. v. Reynolds et al., supra. Defendant says that "the basic rule in Missouri as to duress is that there must have been power to distrain the person or the property of the person on whom the duress was exercised. The further interpretation of the rule found in the cases of 'business duress' is not inconsistent with the basic rule because in such cases of 'business duress' the governmental body has power to disrupt or destroy the business of the taxpayer for failure to pay the license tax. It is still the law that *when the only means of compelling the tax is by civil suit in which the taxpayer has an opportunity to defend and assert any invalidity, there is no duress*" (italics ours).

It will be noted from the Begley case that each case of alleged duress stands on its own heels and that a threat of serious financial loss is sufficient to constitute duress and ground for relief from an obligation where an ordinary suit at law or equity might not be an adequate remedy. Did the individual lot owner in the sewer district concerned here have an *adequate* remedy by a suit in equity to cancel the taxbills or by resisting a suit at law to collect? If he did, then plaintiff should not recover. The Ruckels suit to cancel was a joint effort by the lot owners. The trial covered a period of nearly two weeks; the record covered 1,000 printed pages; and the costs in the circuit court were in excess of $700. It is quite apparent that the burden of prosecuting the Ruckels case was a staggering one. The burden of properly defending a suit on one of the taxbills would have been equally as great. The taxbills were liens on the lots; in-

terest was piling up at seven percent before maturity and at eight percent thereafter. According to defendant's construction of the law applicable to the situation no matter how corrupt. and fraudulent were the proceedings leading up to the execution and delivery of the taxbills and no matter if the taxbills were void, and no matter how great and expensive the burden to proceed to cancel the taxbills by suit in equity or to defend when sued, if a lot owner paid he did so voluntarily and could not recover back.

We do not think the law as to payment under duress should be so restricted as in the Claflin and Franke cases. And it will be noted that the Claflin case was, in effect, overruled by the Begley case, and that the Franke case ruling was based largely on the Claflin case. Also, it will be noted that State ex rel. v. Reynolds, and the Begley case were in banc, while the Franke case was in division. Also, it will be noted that in both the Claflin case and the Franke case some emphasis seems to have been placed on the fact that there was no fraud involved. And it will be noted, by reference to the Ruckels case [174 S. W. (2d) 185] that fraud and conspiracy of the worst sort tainted the taxbills upon which plaintiff's assignors paid. And as we have stated, the burden of establishing such fraud and conspiracy was staggering. In the situation here we are constrained to rule that plaintiff's assignors paid under duress and not voluntarily. To rule otherwise would not square with common justice.

 It is true that the contractor brought mandamus against defendant to compel issuance of the taxbills and. that peremptory writ issued, but such suit did not validate the taxbills, and besides plaintiff's assignors were not parties to the mandamus suit. It was noted in the Ruckels case [174 S. W. (2d) 180] that the mandamus suit was filed, the result, etc., and notwithstanding such the taxbills were held void.

 Defendant makes the point that in collecting on the taxbills it did so as the agent of the contractor and has paid over the money and is not liable. In Cooley On Taxation (3rd Ed.), p. 1482, it is said: ". . . In general, if the money, though actually collected by compulsion, is paid over to the proper receiving officer before suit brought, the collector is protected, and this principle has been applied to cases in which the officer's authority was void for unconstitutionality or other reason." But the situation here is not such as Judge Cooley was speaking about. Here the City, the so called agent, through its officers, that is its agents, committed the wrong which brought the taxbills into existence and cannot take advantage of its own wrong. .See Donahoe v. Kansas City, 136 Mo. 657, 38 S. W. 571; Spencer et al. v. City of Los Angeles et al., 180 Cal. 103, 179 Pac. 163.

 Defendant also makes the point that plaintiff's assignors got value received for the payments made on the taxbills, and in equity

872

and good conscience should not be heard to complain, and that in any event, "defendant is entitled to a setoff for the value of such benefit." The *benefit* which defendant invokes for the basis of the claimed set-off was not asked for nor voluntarily accepted, but was imposed by fraud and conspiracy, hence the situation is quite different from the situation in Myers v. Hurley Motor Co., 273 U. S. 18, 47 S. Ct. 277, 71 L. Ed. 515, cited by defendant, and other similar cases. Also, it was not within the province of the court to determine the value of the claimed setoff. See Drainage Dist. No. 19 v. Arcadia Timber Co. et al., 315 Mo. 597, 286 S. W. 93, 1. c. 94.

Defendant complains on the exclusion of evidence. Numerous property owners in the sewer district, including plaintiff's assignors, protested the formation of the district from the beginning. Plaintiff here was chairman of a property owners committee and defendant in the present case sought to introduce evidence of certain proceedings before this committee in order to show that the invalidity of the taxbills was brought home to plaintiff's assignors before they paid. If it be assumed that such knowledge was brought home to plaintiff's assignors as claimed, such would not operate to make the payments on the taxbills *voluntary* as that term is used in the law of duress. In duress the victim acts *knowingly*, but unwillingly. See Coleman et al. v. Crescent Insulated Wire & Cable Co. et al., 350 Mo. 781, 168 S. W. (2d) 1060, 1. c. 1065.

This cause is for money had and received. Such an action is founded "upon the principle that no one ought unjustly to enrich himself at the expense of another, and it is maintainable in all cases where one person has received money or its equivalent under such circumstances that in equity and good conscience he ought not to retain it and, ex aequo et bono, it belongs to another." 4 Am. Jur., p. 509, Sec. 20. Defendant was not *enriched* since it paid the money *received* to the contractor, but it is also true that defendant through its officers was a party to the fraud and conspiracy which contaminated and made void the taxbills upon which plaintiff's assignors paid and upon which defendant collected.

The judgment should be affirmed and it is so ordered. *Dalton* and *Van Osdol, CC.,* concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.