STATE OF MISSOURI, at the Relation of S. S. KRESGE COMPANY, a Corporation, Relator, v. BEN H. HOWARD, Comptroller of the Department of Revenue of the State of Missouri.—No. 40765.— 208 S. W. (2d) 247.

Court en Banc, December 29, 1947.

Rehearing Denied, February 9, 1948.

*Stanley Garrity, Robert S. Eastin* and *Scott R. Timmons* for relator; *Caldwell, Downing, Noble & Garrity* of counsel.

304

*J. E. Taylor*, Attorney General, and *Will F. Berry, Jr.*, Assistant Attorney General, for respondent.

[249]. DOUGLAS, J.—Relator brings this original proceeding in mandamus to compel the State Comptroller to certify to the State Auditor for payment relator's claim of $1710, and to execute the warrant required to be transmitted with the certification, all prerequisite to the payment of the claim. See Secs. 11008.36, 11008.43a Mo. R. S. A.; 1945 Laws pp. 1441, 1443, prescribing the duties of the comptroller under the act setting up the Department of Revenue created by the new Constitution of 1945.

The facts are not in dispute. Relator is a foreign corporation and for many years has been licensed to do business in this State where it

operates a number of retail stores. It was incorporated in Michigan in 1916 for a duration of thirty years or until March 9, 1946. Before its charter expired it amended its articles of incorporation to extend its corporate duration for an additional thirty years, and presented a copy of the amendment to the Secretary of State of Missouri for filing here in order to obtain a renewal of its certificate of authority to do business in this State. The Secretary of State refused to issue such a certificate until relator paid the domestication tax in the same amount required if it were seeking an original qualification to do business here. The domestication tax amounted to $1710 which relator paid, together with other fees which are not involved in this case.

A few months later this Court handed down a decision in State ex rel. H. D. Lee Co., Inc. v. Bell, 355 Mo. 94, 195 S. W. (2d) 492, holding that under the new corporation code a foreign corporation is entitled to have a charter amendment extending its corporate duration filed and its authority to do business continued without being required to pay such domestication tax. For the new corporation code see 1943 Laws p. 410 et seq.; Mo. R. S. A. Sec. 4997.1 to 4997.176.

Relator then attempted to obtain a refund of the $1710 but was refused. However, the 64th General Assembly in House Bill 445, the omnibus appropriation act, provided by Section 9.061: "There is hereby appropriated out of the State Treasury, chargeable to the General Revenue fund, the sum of $1710. . . . for the relief of the S. S. Kresge Company because of the over-payment of foreign corporation qualification taxes." This act was approved and duly became law.

Based on this act, relator presented its claim for payment of such amount but the Comptroller refused to certify it, and to execute the warrant for its payment. The Comptroller's refusal rests solely on the Attorney General's advice that such appropriation to relator is unconstitutional. The Comptroller raises no other issue as to the validity of the appropriation and assigns no other causes for his action in refusing to certify the claim for payment. Accordingly, under the facts presented there is no occasion for the exercise of any discretion on his part, and if the appropriation is valid it becomes his positive ministerial duty under the law to perform the necessary acts for the payment of the claim.

Under these circumstances mandamus will lie. We do not have here the situation which existed in State ex rel. Gehner v. Thompson, 316 Mo. 1169, 293 S. W. 391, where we held mandamus would not lie to control the exercise of discretion of a judicial or quasi judicial officer over matters not ministerial in their nature.

Ordinarily a public officer may not question the constitutionality of a statute as a defense to mandamus to compel him to perform a ministerial duty. State ex rel. v. Jones, 328 Mo. 267, 41 S. W. (2d)

393. But in this case such defense is a proper one. Sec. 11008.46 Mo. R. S. A. provides that if the comptroller shall knowingly certify a claim not authorized by law he may be deemed guilty of a felony. Upon the Attorney General's advice that the claim was unauthorized, the comptroller was justified in taking the position he has in refusing to certify it.

We now consider the validity of the claim and the appropriation for its [250] payment. The refund of taxes illegally exacted is ordinarily a matter of governmental grace. On grounds of public policy, the law discourages suits for the refund of taxes illegally levied and collected, and has imposed many restrictions on their recovery. It is generally held that taxes voluntarily paid without compulsion, although levied under an unconstitutional statute, cannot be refunded without the aid of a statutory remedy. 51 Am. Jur. Taxation Sec. 1167.

But here we have no general statute authorizing the refund of a domestication tax illegally exacted. Nevertheless, under the common law if the payment of a tax is deemed involuntary, a tax which is unlawfully collected may be recovered back by appropriate action. 51 Am. Jur. Ibid. Here we have a tax which was unlawfully collected under the express ruling of the H. D. Lee case. So the only question as to the common law right of relator to a refund is whether the payment of the tax was voluntary or involuntary.

The tax was not paid under protest. Even so, that fact does not determine whether it was paid voluntarily or involuntarily and has little or no weight on the question. See Annos. 64 A. L. R. 26, 84 A. L. R. 295; Robins v. Latham, 134 Mo. 466, 36 S. W. 33.

In Couch v. Kansas City, 127 Mo. 436, 30 S. W. 117, we followed the prevailing rule that a voluntary payment of a tax made under a mistake of law but with a full knowledge of all the facts cannot be recovered. However, courts are now taking a more liberal view as to whether certain types of taxes are ever in fact voluntarily paid since the urgent and immediate payment of them is compelled in order to avoid the harsh penalties imposed for non-payment. The compulsion brought about by such penalties creates what the writers have termed technical or implied duress sufficient to make the payment of such taxes involuntary. We adopted the modern view of greater liberality in recognizing such duress in tax payments in Brink v. Kansas City, 355 Mo. 860, 198 S. W. (2d) 710, where we declined to follow the stricter view of some of our earlier decisions.

And even more to the point in this case this court has held that the payment of a tax in order to avoid the forfeiture of the payor's right to continue in business "constituted such duress as would render the payment of the tax involuntary." State ex rel. American Mfg. Co. v. Reynolds, 270 Mo. 589, 194 S. W. 878. See also American Mfg. Co. v. City of St. Louis, Mo., 192 S. W. 399; Simons Hardware Co. v.

City of St. Louis, Mo., 192 S. W. 394; Standard Oil Co. v. City of Moberly,. Mo. App., 33 S. W.. (2d) 157. Other jurisdictions have also followed this rule. 51 Am. Jur. Taxation, Sec. 1213; Annos. 48 A. L. R. 1391, 64 A. L. R. 121, 74 A. L. R. 1305, 84 A. L. R. 297. For a case holding payment of a domestication tax was involuntary under almost identical facts and similar issues see Austin National Bank v. Sheppard, 123 Tex. 272, 71 S. W. (2d) 242.

In the instant case relator was faced with the forfeiture of its right to continue business here, and with other penalties, unless it paid the domestication tax. We hold that under these circumstances it was an involuntary payment. Being an involuntary payment of an illegal tax relator has a lawful right to have it refunded by the State. The State itself, without intervention of judicial process which was not necessary under the circumstances, has seen fit to acknowledge its lawful obligation to relator by making the appropriation. And certainly the State may appropriate money for the payment of its lawful obligation unless, because of particular circumstances, there is some constitutional bar.

■ Respondent contends the appropriation offends several constitutional provisions. Section 38 of Article III, Constitution 1945 denies the general assembly the power to grant public money or lend public credit to any private person or corporation. This prohibition does not apply to the appropriation to relator because it was in payment of a valid public obligation, and was not a grant or gift of public money. As was said in Re Monfort, 193 Minn. 594, 259 N. W. 554, under a similar constitutional provision: "There is nothing in [251] the Constitution forbidding the State to recognize and pay its just debts." State ex rel. v. Walker, 85 Mo. 41 is not apposite under the facts.

■ Subsection (30) of Section 40, Article III forbids the passing of a special law where a general law can be made applicable. A general law would not be applicable here. An appropriation to pay a particular obligation to a particular obligee is not a proper subject for a general law. Such an appropriation is not comprehended as a special law under this section. But it is suggested there may be others who suffered the same illegal exaction of the domestication tax. The record before us does not disclose this fact. Even if there are, such fact does not affect the validity of the appropriation for the payment of relator's lawful claim. It may be assumed that the State will pay all its lawful obligations.

■ Subsection (7) of Section 40, Article III forbids the general assembly by local or special law from "remitting fines, penalties and forfeitures or refunding money legally paid into the treasury." The refund here is not by "special" law. Furthermore this provision does not forbid refunding money paid into the treasury through *illegal* exaction as was done in this case.

Section 28 of Article IV provides that no obligation for the payment of money shall be incurred unless the comptroller certifies it for payment. Section 22 of the same article makes the comptroller the director of the budget, and provides he shall preapprove all claims and accounts. Clearly these provisions are not intended as conditions precedent limiting the power and authority of the general assembly to make an appropriation. To the contrary, an appropriation by the general assembly appears to be a prerequisite for the duties to be exercised by the comptroller under these sections. Since a valid appropriation has been made it is the duty of the comptroller to act. For decisions from other jurisdictions on the constitutionality of statutes providing for refund of taxes illegally exacted see Anno. 98 A. L. R. 284.

What we have said disposes of other contentions advanced against the constitutional validity of the appropriation. Since we find the appropriation valid in all respects, it is the duty of respondent to perform without delay all the required acts necessary to the payment of relator's valid claim.

Accordingly, for that purpose our alternative writ in mandamus is made *peremptory*. All concur.