**NAEGELE OUTDOOR ADVERTISING COMPANY, INC., Respondent,**

**v.**

**KANSAS CITY, Missouri, Appellant.**

**No. 57996.**

Supreme Court of Missouri, Division No. 2.

May 13, 1974.

Charles C. Shafer, Jr., Howard Chamberlin, Kansas City, for respondent.

Aaron A. Wilson, City Counselor, Robert D. Munro, Associate City Counselor, for appellant.

MORGAN, Judge.

The Naegele Outdoor Advertising Co., Inc., herein referred to as plaintiff, sued the city of Kansas City for a refund of a portion of the merchants and manufacturers tangible personal property tax paid by plaintiff to the city for the year 1968. After trial to the court on a stipulation of facts, judgment was entered in favor of plaintiff in the amount of $1,815.03 and the city has appealed. Disposition of the case requires construction of Article X, Section 11(a) of the 1945 Missouri Constitution, V.A.M.S. and the revenue laws of this state. Jurisdiction is in this court. Mo. Const. Art. 5, § 3. We affirm.

Stipulated facts, among others, were:

1. The city assessed property of plaintiff at $266,340.00 for the year 1968 and mailed a tax notice to plaintiff based on said valuation. The notice declared that penalties would be assessed on the amount due ($4,048.37) if not paid prior to August

31, 1968. The plaintiff paid said amount on August 22.

2. Thereafter, plaintiff received a tax notice from Jackson County, for state and county purposes, for the year 1968 based on an assessed valuation of $146,930.00. This tax was paid by plaintiff when due during the month of December, 1968, and it immediately notified the city that the $266,340.00 assessed valuation was constitutionally invalid, and that the city tax based on the constitutional maximum valuation ($146,930.00 assessed by the county) should have been $2,233.34 instead of $4,048.37, or a difference of $1,815.03 for which judgment was entered by the trial court.

In its Answer, the city admitted that the city and county had assessed the "identical property" owned by plaintiff. At this point, for simplicity of reading, we do note that after entry of judgment on March 1, 1972, the city did on March 2, 1972, file an affidavit of the city assessor that the boundaries of the city and county of Jackson were not co-extensive in that the city extended into both Platte and Clay Counties. This fact, of course, was not a new discovery but was known to the parties at the time pleadings were filed and the cause was tried. Nevertheless, it is significant that in this belated effort the city made no effort to establish that plaintiff, in fact, did own taxable property in that part of the city extending into Platte and Clay Counties and which property could not have been included in the assessment of Jackson County.

Plaintiff relies primarily on Article X, Section 11(a) of the 1945 Missouri Constitution, which provides:

"Taxes may be levied by counties and other political subdivisions on all property subject to their taxing power, but the assessed valuation therefor in such other political subdivisions shall not exceed the assessed valuation of the same property for state and county purposes."

The city relies primarily on Section A5.-25 of its Administrative Code, which provides:

"Duty of taxpayer. Whenever any payment under protest is offered for general property taxes, special taxes or license taxes, before such taxes are delinquent, the city treasurer shall accept such payment only when the tender of payment is for the full amount of the taxes billed and is accompanied by a written statement from the taxpayer setting forth his protest, his grounds for the protest, a declaration as to the portion of the total payment being protested, supported by the assessment and tax rate factors involved, and a statement as to the nature of the proceedings he intends to institute or has instituted to resolve the question in issue."

■ The record includes trial briefs submitted on behalf of both parties, and the arguments therein revolve around the admission by the city that it makes no effort at all to limit its assessed valuations of property to those of the county. In fact, it is rather bluntly suggested that the constitutional mandate limiting valuations by the city is of no concern to its assessor, and that compliance with the dictates of the constitution of this state will result only if a taxpayer complains formally by a protest made in accordance with Section A5.25 of its Administrative Code. The city, in obvious recognition of the fact that city taxes become delinquent prior to receipt by a taxpayer of the county tax notice, suggests that a "formal protest" could be made in August because: "The taxpayer could ascertain the County valuation for tax purposes simply by checking same with the County assessor and need not wait until he received the County tax statement * * * The assessor's books are public records, available to all interested taxpayers, and were available some two months prior to the time plaintiff paid the City tax." We refrain from commenting, as did the city, on the obvious turmoil that

would result if taxpayers of a city of approximately one-half million people converged on the county assessor during August to determine whether or not the city had respected the constitutional limitation noted. The argument, at best, is fallacious because it seeks to shift to the taxpayer the sole burden of seeing that the city complies with the law—a duty placed on the city by the constitution of this state and which is self-enforcing. State ex rel. Van Brown v. Van Every, 75 Mo. 530 (1882); Brooks v. Schultz, 178 Mo. 222, 77 S.W. 861 (1903); State ex rel. Emerson v. Mound City, 335 Mo. 702, 73 S.W.2d 1017 (1934).

The trial court in a memorandum opinion, after expressing its dismay at the city's contentions, found that the plaintiff had protested at the earliest possible time and that payment during August to avoid penalties was, in fact, an involuntary payment made under duress. The holding was based primarily on the opinion of this court in State ex rel. S. S. Kresge Co. v. Howard, 357 Mo. 302, 208 S.W.2d 247 (1947), wherein it was said, 1. c. 250, that: ". . . courts are now taking a more liberal view as to whether certain types of taxes are ever in fact voluntarily paid since the urgent and immediate payment of them is compelled in order to avoid the harsh penalties imposed for non-payment. The compulsion brought about by such penalties creates what the writers have termed technical or implied duress sufficient to make the payment of such taxes involuntary. We adopted the modern view of greater liberality in recognizing such duress in tax payments in Brink v. Kansas City, 355 Mo. 860, 198 S.W.2d 710 (1946), where we declined to follow the stricter view of some of our earlier decisions."[1]

The trial court also found that reliance by the city on Section A5.25 of its Administrative Code was ill founded, and that it was not available as a defense, because: "That section of the City Ordinances merely prescribes a procedure by which a taxpayer may pay city taxes under protest and sets forth administrative steps concerning how the protest must be made, the portions protested, the grounds for protest, et cetera. It does not purport, even by inference, to condition the right to refund of illegal or improper taxes on the filing of such a protest."

We, as was the trial court, are confronted by a novel situation, i. e., a taxing authority that makes no pretense of following the constitutional law of this state. An admission of such a purpose threads throughout the brief submitted by the city, as well as being a concession made in oral argument before this court—the latter being confirmed recently by playing, again, the tape made of the oral argument. The parties have not cited a case factually in point, nor has our own research divulged a comparable situation. Nevertheless, it is apparent that the city has failed to heed the admonition which Tiberius Caesar gave to some of his over-reaching taxing officials that: "It is the part of a good shepherd to shear his flock, not flay it." (Suetonius, Lives: Tiberius, Ch. XXXII, sec. 2.[2]

A proper disposition of this case does not require resolution of whether or not plaintiff "voluntarily" or "involuntarily" paid the questioned taxes, upon which the right to a refund would turn under the general rules exhaustively considered in the cases cited, although ". . . each case of alleged duress stands on its own

1. State ex rel. American Mfg. Co. v. Reynolds, 270 Mo. 589, 194 S.W. 878 (1917); Simmons Hardware Co. v. City of St. Louis, 192 S.W. 394 (Mo.1917); American Mfg. Co. v. City of St. Louis, 192 S.W. 399 (Mo.1917); and, Standard Oil Co. v. City of Moberly, 33 S.W. 2d 157 (1930). See also: Lamar Tp. v. City of Lamar, 261 Mo. 171, 169 S.W. 12 (Mo.1914); Manufacturer's Casualty Ins. Co.

v. Kansas City, 330 S.W.2d 263 (Mo.App. 1959); Gas Service Company v. Morris, 353 S.W.2d 645 (Mo.1962); and, McGraw-Edison Company v. Curry, 485 S.W.2d 175 (Mo.App. 1972).

2. Stevenson, The Home Book of Quotations, Third Edition, Taxation, p. 1968.

heels . . ." Brink v. Kansas City, supra, 198 S.W.2d at 715. To do so would not reach the fundamental issue in this case, which stems from one question. Is the constitution of this state to control the taxing power of the city? In answering the question posed, we do not confirm or reject the conclusions of the trial court made in light of the rules applied by it, but do affirm the judgment entered under a different but recognized rule of law, seldom needed, applicable to the facts of this case.

"The broad principle that the decisions of administrative officials relating to the assessment of taxes are final and conclusive so as to prevent judicial redress for an excessive or illegal assessment is subject to a limitation or qualification with respect to the manner in which the officials acted in arriving at the challenged assessment; this conclusion is supported by numerous cases in which the view was taken that the courts may act to nullify a tax assessment arrived at in a particular manner, variously described but always in terms indicating a belief that it was essentially unconscionable. Thus, it has been indicated that a valuation for tax purposes made by an administrative agency in a capricious or whimsical way, through chance or guess and without the exercise of any judgment, should be annulled by the courts. The precise terms used to describe the kind of conduct by administrative officials which will result in a holding that their action is not conclusive and final but is subject to review by the courts are many and various, those most frequently invoked being fraudulent, or disclosing or resulting in fraud, arbitrary, capricious, unwarrantable, corrupt, discriminatory, and inequitable." 51 Am.Jur., pp. 699–700, § 771, Taxation.

We exercise a sufficient amount of restraint to rule only that the action of the city was "arbitrary." Compare Brink v. Kansas City, 355 Mo. 860, 198 S.W.2d 710 (1946).

The judgment is affirmed.

All of the Judges concur.

