L. J. HARBECK, Appellant, v. CITY OF SIOUX CITY, Appellee.

**PAYMENT:    Recovery of Payment—Duress—Threats to Close Up Business.** The payment of an excessive and unauthorized municipal license fee under threat by the public authorities to close up the business of the licensee if such payment is not made, will be deemed involuntary, and therefore recoverable.

**Headnote 1:** 37 C. J. p. 256.

*Appeal from Woodbury District Court.*—A. O. WAKEFIELD, Judge.

MARCH 17, 1925.

ACTION at law, to recover money paid either by mistake or under duress. There was a demurrer to the petition, which was sustained. The plaintiff, electing to stand upon his petition, suffered judgment, and has appealed therefrom.—*Reversed.*

*Sam G. Pickus* and *Alfred Pizey*, for appellant.

*Paul Hatfield* and *E. G. Smith*, for appellee.

EVANS, J.—It appears from the petition that the plaintiff was a vendor of peanuts and pop corn, and maintained a stand

on or near to a sidewalk in the city of Sioux City, and upon premises leased by him from one Nelson. There was a city ordinance in force which required the payment of a license fee for such privilege, of $25 per year, and no more. The plaintiff entered upon such business about April 1, 1918. He alleged in his petition the following:

"That, on or about the 1st day of April, A. D. 1918, this plaintiff was informed by the then commissioner of public safety that the license fee was $25 per month, and that, unless he, the said plaintiff, paid the same, his said place of business would be closed by the police department, and he would no longer be permitted to operate or maintain said pop corn and peanut stand; and he was also informed by said commissioner that the proper and lawful license fee was $25 per month; that he believed statements to be true, and because of said representations, and fearing his means of livelihood would be taken from him, he paid the sum of $25 for each month until the 4th day of December, A. D. 1922."

The demurrer to the petition is predicated upon the ground that the payment was voluntary, and that the plaintiff was thereby estopped from recovering the money thus paid. We have to determine, therefore, whether it appears upon the face of the petition that the payments were voluntary, within the meaning of the law.

It is a rule which has often been applied that the payment of money into a public treasury, where the payer is under no other stress or menace than that of a personal action against him for the recovery of such amount, then the payment is voluntary, rather than under duress. The appellee relies upon this line of cases.

It is also the rule that, where a person or municipality exacts and receives more than is legally due from the payer, while such payer is under the menace of injurious interference with or seizure of his property or person, such payment will not be deemed voluntary.

If the payer be menaced only with a personal action against him, he is thereby presented with a sufficient opportunity to test the legality of the demand against him. If he chooses to pay, rather than to contest, his payment is deemed voluntary.

On the other hand, where the public body has the power of summary procedure, such as the power to seize the property or person, or to evict the payer, or to cut off his supply of water or gas or electricity, as the case may be, and thereby to effect immediate injury to the payer or to his business, the payer is deemed to stand not in equality with a municipality or other body which makes such demand. The yielding of the payer to a demand under such circumstances is deemed involuntary, and a form of legal duress. For cases illustrative of this rule, see the following: *City of Chicago v. Northwestern Mut. L. Ins. Co.*, 218 Ill. 40 (75 N. E. 803); *Oceanic Steam Navigation Co. v. Stranahan*, 214 U. S. 320 (53 L. Ed. 1013); *Bruner & Bloom v. Clay City*, 100 Ky. 567 (38 S. W. 1062); *Gentry Bros. v. City of Lincoln*, 146 Ill. App. 60.

Good conscience and morality are with the plaintiff in this case, even if no other ground were apparent in the record than that of payment by mistake. The petition is not a model. But it does appear therefrom that the plaintiff paid the excessive license pursuant to the declaration of the commissioner of public safety that a failure to pay the same would result in the closing of his business. We may take judicial notice that police power has a peremptory quality, and that its exercise by police officials is often summary. The result was that the plaintiff paid to the city excess fees amounting to more than $1,200. Good morals often point an index to good law. The pointing is very plain in this case.

We think the demurrer should have been overruled, and the judgment below is, accordingly, reversed.—*Reversed.*

FAVILLE, C. J., and ARTHUR and ALBERT, JJ., concur.