PARAMOUNT FILM DISTRIBUTING CORP., Respondent, *v.* STATE OF NEW YORK, Appellant.   (Claim No. 45976.)

Third Department, May 15, 1967.

*Louis J. Lefkowitz, Attorney-General (Edwin R. Oberwager and Ruth Kessler Toch* of counsel), for appellant.

*John R. Davison* and *Leonard Kaufman* for respondent.

REYNOLDS, J. This is an appeal from an order of the Court of Claims (REUSS, J.), denying the State's motion to dismiss the claim on the ground that it fails to state a cause of action or alternatively to dismiss that portion of the claim which relates to payments made before May 24, 1965 on the ground that the Court of Claims lacks jurisdiction.

On June 10, 1965, the Court of Appeals in *Matter of Trans-Lux Distr. Corp.* v. *Board of Regents of Univ. of State of N. Y.* (16 N Y 2d 710) held the movie licensing provisions of the Education Law (Education Law, § 120 *et seq.*) void as violative of the Fourteenth Amendment in accordance with the United States Supreme Court's reversal of an earlier Court of Appeals' decision upholding constitutionality (see *Matter of Trans-Lux Distr. Corp.* v. *Board of Regents of Univ. of State of N. Y.,* 14 N Y 2d 88, revd. 380 U. S. 259). On November 24, 1965, claimant filed a notice of intention to file a claim with the Clerk of the Court of Claims and in December, 1965, claimant filed the instant claim seeking the refund of fees paid pursuant to the licensing provisions.

The State initially contends that the licensing fees were voluntarily paid without protest and thus should not be recoverable citing *Mercury Mach. Importing Corp.* v. *City of New York* (3 N Y 2d 418) and *Adrico Realty Corp.* v. *City of New York* (250 N. Y. 29). Concededly no protest was made but there was no statutory requirement of payment under protest. In our opinion the case comes rather within the rationale of *Five Boro Elec. Contrs. Assn.* v. *City of New York* (12 N Y 2d 146). There the Court of Appeals in upholding the right of New York City electricians to recover excess license fees, the imposition of which had been held unconstitutional, overcame the argument that the payments were voluntarily made stating (pp.

150–151): "We agree with Special Term and the Appellate Division that under the circumstances of this case protest was not required in view of the compulsory nature of the payment of these exorbitant license fees. We are aware of the repeated reference in the cases to duress existing 'where present liberty of person or immediate possession of needful goods is threatened by nonpayment of money exacted' (*Mercury Mach. Importing Corp.* v. *City of New York, supra,* p. 425; *Peyser* v. *Mayor of City of N. Y.,* [70 N. Y. 497]) as well as the statement in *Adrico Realty Corp.* v. *City of New York* (*supra*) that this formula yields to the reason of other situations (250 N. Y. 29, 33). Here we are not dealing with an illegal tax or impost to redress which some other remedy was available (e.g. *Mercury Mach. Importing Corp.* v. *City of New York, supra*; *People* v. *Wilmerding,* 136 N. Y. 363, 374), but these electricians were placed in a situation where their only alternative was to submit to an illegal exaction or discontinue their businesses (*Swift & Co.* v. *United States,* 111 U. S. 22, 28). They were not allowed to operate without licenses, nor could their licenses be renewed except by payment of excessive fees. To be sure, the invalidity of this exaction was determined by declaratory judgment in the *Alderstein* case [6 N Y 2d 740], but unless they had paid the excessive fees required for their licenses to do business they would have been prevented from earning a livelihood while that litigation was pending." Here the claimant, as the electricians, had to pay the license fees to stay in business and did so solely for that reason. Thus the fees having been paid under duress and not voluntarily were recoverable.

As an alternative bar to the recovery sought, the State contends that since the claimant did not file its notice of claim within six months of its last payment, it did not comply with subdivision 4 of section 10 of the Court of Claims Act and is thus precluded from recovery under *Guaranty Trust Co.* v. *State of New York* (299 N. Y. 295). In *Guaranty* the Court of Appeals stated (p. 300): "Taking the payments of the unemployment insurance contributions in question to have been illegally compelled, the Court of Claims said that 'claimant's cause of action arose immediately that it paid the tax.' (186 Misc. 676, 683.) Such contributions had been paid on October 11, 1939, and January 13, 1940, as we have noticed. It followed, therefore, that the claim had long been barred as the Court of Claims held." Thus the Court of Appeals clearly held that in *Guaranty* the cause of action accrued for the return of payments made pursuant to a void statute at the time such payments are made. Claimant urges that *Guaranty* should

not be held applicable in the instant case on the grounds that the cause of action here sought to be asserted did not accrue until June 10, 1965 because until that time there was no competent tribunal in which to proceed to assert their claim for recovery of the fees in question (*Homer Eng. Co.* v. *State of New York,* 12 N Y 2d 508, 510–511). Initially claimant asserts that *Guaranty* is distinguishable because there the claimant had an administrative remedy available to it where, as here, no such alternative exists. Both the Court of Claims' and the Court of Appeals' decisions in *Guaranty,* however, make it abundantly clear that the availability of this alternative administrative remedy was not considered as a controlling factor since the administrative remedy and the Court of Claims' suit were held to be mutually exclusive. Claimant further asserts that since the Court of Claims lacks equity jurisdiction (*Psaty* v. *Duryea,* 306 N. Y. 413; *18 East 48th St. Corp.* v. *State of New York,* 19 A D 2d 940), it could not have tested the unconstitutionality in that tribunal, and since the Supreme Court lacks jurisdiction to direct a money judgment against the State (*Samuel Adler, Inc.* v. *Noyes,* 285 N. Y. 34), it could not get full relief in that forum either. Thus its only avenue of approach would be to first proceed in Supreme Court to have the licensing statute voided and then, if successful, seek refund from the Court of Claims. This claimant alleges while theoretically a possibility, as a practical matter would not provide relief in most instances. With the court calendars as congested as they are and suits attempting to declare unconstitutional State or local legislation invariably being contested in the appellate courts of the State and even in the United States Supreme Court it must be recognized that in most if not all instances more than two years, the statutory period under subdivision 4 of section 10 of the Court of Claims Act, would have elapsed from the date of payment before the litigation had been settled on the question of constitutionality. Of course, the major premise in this argument is that the suit could not initially be brought in the Court of Claims because of the presence of the constitutional issue. In *Psaty* v. *Duryea* (*supra,* p. 417) the Court of Appeals stated: '' We may assume that, in determining claims for money damages against the State, the Court of Claims may apply equitable considerations and perhaps, to some extent, may grant some sort of incidental equitable relief, but that concept has nothing to do with this case since this, in essence and by concession, is not a suit for money damages but, primarily, an equitable action to cancel and rescind a bid which equitable relief, as plaintiffs concede, was essential before there could be any injunction or

mandate for the return of the money. In other words, this was a suit for traditional equitable relief, with the return of the money to follow as a consequence of the equitable relief, if granted.'' The test is thus whether the constitutional issue is ancillary to an action for monetary recovery or vice versa. Here the constitutional issue was centered on an objection to the cumbersome review procedures whenever a movie was denied a license. It was only as an incidental happening when the entire statute was struck down that the fee payments also were voided. Thus assuming claimant, who never had been denied a license, had standing to sue, his suit would have to be based not on the validity of the fee itself but the cumbersomeness of the review procedure. As such the constitutional issue would not be ancillary or incidental to the monetary recovery, but rather a separate and distinct issue from which the right to a monetary recovery would be an incidental by-product. At this point *Guaranty* becomes readily distinguishable. Concededly, if the issue were in fact faced by the Court of Appeals in *Guaranty,* it must have found that the suit could have been instituted in the Court of Claims despite the constitutional issue present. But in *Guaranty,* had the case been sooner brought, the constitutional question would have gone directly to the validity of the tax itself, and its invalidity would have been the direct basis for recovery. Thus, we hold that claimant effectively had no tribunal in which to bring its action prior to June 10, 1965, the date of the Court of Appeals' determination, and that, therefore, the Statute of Limitations did not commence to run until that date. To hold otherwise in a case such as the instant one would render a claimant's vindication of a constitutional right in substantial part a Pyrrhic victory.

The order should be affirmed.

HERLIHY, J. (dissenting). Both parties to this appeal assume that if the payments were '' voluntarily '' made by the respondent, they are not recoverable at law. The majority opinion holds that this respondent is in the same situation as the plaintiffs in *Five Boro Elec. Contrs. Assn.* v. *City of New York* (12 N Y 2d 146) in that the respondent had to pay the license fees in order to stay in business. That decision does not govern the present situation. In *Five Boro,* the original action brought to declare the fees excessive and illegal was commenced as a class action (*Adlerstein* v. *City of New York,* 6 N Y 2d 740) and perforce the parties seeking recovery had done something to prevent the exaction of such fees. As the court noted in *Five Boro Elec. Contrs. Assn.* v. *City of New York* (*supra,* pp. 149–150) '' Unless they [plaintiffs] had paid the excessive fees required for their

licenses to do business they would have been prevented from earning a livelihood while that litigation was pending." It is readily apparent that in that case the parties seeking recovery had in fact paid the fees involuntarily, which fact was witnessed by their proceeding to correct the situation through litigation.

In the case of *American Dist. Tel. Co.* v. *City of New York* (213 App. Div. 578, affd. 243 N. Y. 565) the plaintiff had participated in the litigation which served as the basis for the recovery sought in that case. (See *Holmes Elec. Protective Co.* v. *Williams,* 181 App. Div. 687, revd. 228 N. Y. 407.) Again the fact of involuntariness was witnessed by resort to litigation.

In the present case it is quite apparent that the respondent never considered the fees unjust or illegal until it perceived the possibility of a windfall by virtue of the decision in *Matter of Trans-Lux Distr. Corp.* v. *Board of Regents of Univ. of State of N. Y.* (16 N Y 2d 710). From the present record it would appear that the complete lack of any attempt to avoid the license fees is sufficient to overcome what has been assumed to be a presumption of compulsion or duress (involuntariness) arising from the fact that the payment of such license fees was essential to the business of the respondent.

I would further disagree with the majority insofar as they find that the Statute of Limitations did not run until after the final decision in the *Trans-Lux* case. The respondent argues that it could not have had recovery in our Supreme Court because that tribunal lacks jurisdiction to direct a money judgment against the State and that it could not have tested the unconstitutionality of the statute involved in the Court of Claims because that court lacks equity jurisdiction. The rule is that " The Statute of Limitations   *   *   *   does not commence to run until the accrual of a legal right to relief   *   *   *   nor will it run or continue to run unless there exists a tribunal of competent jurisdiction to enforce the right ". (*Homer Eng. Co.* v. *State of New York,* 12 N Y 2d 508, 510–511.)

Assuming, but not deciding, that the respondent was without relief in the Court of Claims, it appears that it had available means of redress which would have or could have resulted in full relief by commencing an action for declaratory judgment in the Supreme Court and in conjunction therewith invoking the provisional remedies available to it under the former Civil Practice Act to preserve the *status quo* of the parties pending the outcome of the litigation. Whether or not the *status quo* would have been preserved by the court is problematical, but the uncertainty in that regard exists because the respondent made no attempt to seek relief. Since the respondent did not

file its notice of claim within six months of its last license fee payment, the claim should have been dismissed for failure to comply with subdivision 4 of section 10 of the Court of Claims Act.

Although it is not discussed in the majority opinion I would note that this claim is based on the theory that the decision of the Court of Appeals in *Matter of Trans-Lux Distr. Corp.* v. *Board of Regents of Univ. of State of N. Y.* (16 N Y 2d 710, supra) is a determination that all license fees paid and collected in connection with such statute were unlawfully collected. The majority would seem to refute that theory in the wording of its opinion stating: " It was only as an incidental happening when the entire statute was struck down that the fee payments also were voided ". Upon examination of all of the opinions and memoranda written by the courts in the history of that case, none of them deemed the requirement of obtaining a license to be unconstitutional. The majority opinion of the Supreme Court in *Freedman* v. *Maryland* (380 U. S. 51, 58), which case was the basis for the declaration of unconstitutionality in *Matter of Trans-Lux Distr. Corp.* v. *Board of Regents* (380 U. S. 259), inferentially approves the requirement of licensing for motion pictures in advance of their showing. The case law and textbooks contain abundant authority for the proposition that reasonable fees may be exacted to help defray the administrative costs incurred in licensing. In view of the fact that the defect in the censorship statute here invoked was one of procedure in the manner and method of denying a license (see Education Law, § 122), it appears that a well-founded argument might be made that the declaration of unconstitutionality was prospective only in application as to the other sections contained in article 3 (part II) of the law. For example, section 123 with reference to certain types of films does not require " inspection, permits or fees ".

This petitioner, not a party to the *Trans-Lux* action, should not be allowed to be a " beneficiary " to an issue — " fees " pursuant to section 126 — not argued or contested in that action.

For these reasons it appears that the fees were voluntarily paid and, therefore, the present claim should be dismissed for failure to state a cause of action.

GIBSON, P. J., REYNOLDS, AULISI and STALEY, JR., JJ., concur in opinion per REYNOLDS, J; HERLIHY, J., dissents and votes to reverse and dismiss in an opinion.

Order affirmed, with costs.