397 So.2d 457 (1981)
BROWARD COUNTY, Appellant,
v.
Harvey MATTEL, Ray Sandstrom and Fred Haddad, Appellees.
No. 80-265.
District Court of Appeal of Florida, Fourth District.
April 29, 1981.
*458 Harry A. Stewart, Gen. Counsel for Broward County, Fort Lauderdale, for appellant.
Harvey K. Mattel of Harrington & Mattel, Fort Lauderdale, for appellees.
DOWNEY, Judge.
Appellees, Harvey Mattel, Ray Sandstrom, and Fred Haddad, filed a class action on behalf of themselves and all other lawyers in Broward County similarly situated to recover excess occupational license taxes paid to appellant since 1975 and to restrain the Broward County Revenue Collector from collecting such excess taxes in the future. Judgment was entered in favor of appellees, essentially finding that the appellant had been collecting an excessive amount from the lawyers of Broward County for occupational license taxes since 1975, and ordering an accounting of the monies due the members of the class.
In 1955 the Legislature passed Special Act 30639 authorizing Broward County to levy an occupational license tax of $25 on lawyers practicing law in Broward County, which tax was to be used exclusively for the purchase of books and legal periodicals for the Broward County Law Library. Pursuant to this Special Act appellant charged $25 for occupational licenses for lawyers in Broward County. In 1972 Broward County passed Code Section 20-45 providing for an occupational license tax of $15 for persons practicing a profession who offer service to the public for consideration. Later, in November 1974 the citizens of Broward County, by referendum, adopted a Home Rule Charter effective January 1, 1975. Section 7.09 of the Charter had the effect of repealing all of the existing Special Acts. However, on December 17, 1974, the Broward County Commission passed Ordinance 74-21 to be effective January 1, 1975, which reenacted all of the Special Acts to be repealed as of January 1, 1975, that were not in conflict with the Charter.
At trial the parties presented the court with a written stipulation which, among other things, stated:
1. From January 1, 1975, to September 1, 1978, Broward County charged $25 for occupational licenses for lawyers in Broward County pursuant to Special Act Number 30639.
2. If a member of the class did not pay the license tax, penalties were assessed which could include civil suits and penalties, criminal charges, and injunctions against practicing law in Broward County.
3. January 1, 1975, the Broward County Charter went into effect and repealed Special Act 30639, effective January 1, 1975.
4. Commencing January 1, 1975, the occupational license tax to be charged *459 for attorneys in Broward County was governed by Section 20-45, Broward County Code.
At trial no testimony was taken, but the parties offered certain documents in evidence, such as letters from the State Attorney threatening action if the full license tax was not paid,[1] correspondence between one of the appellees and the Revenue Collector, copies of the various statutes, charter provisions and ordinances which the parties felt pertinent, a memorandum and affidavit of the Revenue Collector and a copy of an opinion of the Attorney General relative to tax refunds. Other than the foregoing the trial consisted of counsel engaged in argument over the purported effect of the stipulations and documents in evidence before the trial court.
As we view the record, it fully supports the trial court's decision. It justifies the finding that the controlling law in effect from January 1, 1975, to September 1, 1978, was Broward County Code Section 20-45, which authorized the levy of an occupational license tax on lawyers of $15. A memorandum from the County's Acting General Counsel to the Revenue Collector, dated August 28, 1978, advised the collector that the occupational license tax should be assessed according to the provisions of Code Section 20-45. Furthermore, as we indicated previously, the stipulation signed by counsel states that, commencing January 1, 1975, the occupational license tax to be charged attorneys in Broward County was governed by Section 20-45, Broward County Code.
Next, the county argues that, assuming the taxes were improperly collected, two factors operate to preclude appellees recovering a refund. First, the county contends that the payments were made without protest and thus were voluntary in nature. Second, the county asserts that, regardless of the validity of the tax or the nature of the payments, a refund is legally impermissible since the subject funds are no longer in the county treasury but have been disbursed to various municipalities throughout the county and, finally, there is no statutory authority authorizing such a refund.
The trial court found that the extra $10 the county was assessing lawyers in Broward County after January 1, 1975, was unlawful. As this court stated in Coe v. Broward County, 358 So.2d 214 (Fla. 4th DCA 1978), "... a taxpayer is normally entitled to a refund of taxes paid pursuant to an unlawful assessment." at 216. That does not mean that every time a taxpayer pays an illegal tax he will be successful in his efforts to obtain a refund. If the taxpayer pays the tax voluntarily and there is no provision in the law authorizing a refund, the taxpayer will be unsuccessful. The voluntary payment of an illegal tax precludes a refund absent statutory authority. Contrary to appellant's contention, no statutory provision authorizing a refund is necessary for the taxpayer to obtain a refund where payment of an illegal tax is involuntary. 31A Fla.Jur.2d, Taxation § 887. Thus, the key to appellees' entitlement to a refund here is whether the excessive tax was paid voluntarily or involuntarily. We hold that under the circumstances of this case the tax was paid involuntarily and the class has standing to urge a refund.
The stipulation of the parties states that, if a lawyer did not pay the tax, penalties were assessed. (We assume this really means sanctions were imposed.) This stipulation lists the "penalties" as civil suits and penalties, the institution of criminal charges and imposition of an injunction to prevent practice of the profession. The impact of all of this, or the bottom line, as they say, is the authorities will unhang a lawyer's shingle, prosecute him for practicing without a license, or otherwise involve him in litigation and penalties. This is no imaginary list of horribles because the State Attorney actually wrote Mattel and threatened action if he didn't pay the additional $10. The general rule is that payment *460 of an illegal tax, even without protest, in order to avoid forfeiture of the right to do business is not a voluntary payment. 31A Fla.Jur., Taxation § 900. In State ex rel. S.S. Kresge Co. v. Howard, 357 Mo. 302, 208 S.W.2d 247 (1947), a foreign corporation sought a refund of an illegal tax collected by the state for the privilege of doing business in Missouri. The taxpayer paid the tax but did not do so under protest. However, in considering the propriety of a refund under those circumstances, the court said:
The refund of taxes illegally exacted is ordinarily a matter of governmental grace. On grounds of public policy, the law discourages suits for the refund of taxes illegally levied and collected, and has imposed many restrictions on their recovery. It is generally held that taxes voluntarily paid without compulsion, although levied under an unconstitutional statute, cannot be refunded without the aid of a statutory remedy. 51 Am.Jur. Taxation Sec. 1167.
But here we have no general statute authorizing the refund of a domestication tax illegally exacted. Nevertheless, under the common law if the payment of a tax is deemed involuntary, a tax which is unlawfully collected may be recovered back by appropriate action. 51 Am.Jur. Ibid. Here we have a tax which was unlawfully collected under the express ruling of the H.D. Lee case. So the only question as to the common law right of relator to a refund is whether the payment of the tax was voluntary or involuntary.
The tax was not paid under protest. Even so, that fact, does not determine whether it was paid voluntarily or involuntarily and has little or no weight on the question. See Annos. 64 A.L.R. 26, 84 A.L.R. 295; Robins v. Latham, 134 Mo. 466, 36 S.W. 33.
In Couch v. Kansas City, 127 Mo. 436, 30 S.W. 117, we followed the prevailing rule that a voluntary payment of a tax made under a mistake of law but with a full knowledge of all the facts cannot be recovered. However, courts are now taking a more liberal view as to whether certain types of taxes are ever in fact voluntarily paid since the urgent and immediate payment of them is compelled in order to avoid the harsh penalties imposed for non-payment. The compulsion brought about by such penalties creates what the writers have termed technical or implied duress sufficient to make the payment of such taxes involuntary. We adopted the modern view of greater liberality in recognizing such duress in tax payments in Brink v. Kansas City, 355 Mo. 860, 198 S.W.2d 710, where we declined to follow the stricter view of some of our earlier decisions.
And even more to the point in this case this court has held that the payment of a tax in order to avoid the forfeiture of the payor's right to continue in business `constituted such duress as would render the payment of the tax involuntary.' 208 S.W.2d at 250.
Although there is a split of authority among the jurisdictions, we follow the lead of those states that hold that a payment of a tax is deemed involuntary where the penalty exacted for nonpayment is so severe that it constitutes coercion and duress. Seaboard Air Line Ry. Co. v. Allen, 82 Fla. 191, 89 So. 555 (Fla. 1921); Whyte v. State, 110 Cal. App. 314, 294 P. 417 (1st Calif. DCA 1930); Harbeck v. Sioux City, 199 Iowa 763, 202 N.W. 507 (1925); Paramount Film Distributing Corp. v. State, 27 A.D.2d 420, 279 N.Y.S.2d 781 (1967); Manufacturer's Casualty Ins. Co. v. Kansas City, 330 S.W.2d 263 (Mo. App. 1959); Crow v. City of Corpus Christi, 146 Tex. 558, 209 S.W.2d 922 (1948).
In view of the foregoing we find the appellant has failed to demonstrate reversible error. We therefore affirm the judgment appealed from.
AFFIRMED.
BERANEK and HERSEY, JJ., concur.
NOTES
[1] Some members of the class had paid $15 pursuant to Code Section 20-45, but refused to pay the other $10.