423 So.2d 991 (1982)
CITY OF MIAMI, a Municipal Corporation, Appellant,
v.
FLORIDA RETAIL FEDERATION, INC., a Florida Corporation; Superex Drugs, Inc., a Michigan Corporation; Jefferson Stores, Inc., a Delaware Corporation, and G.C. Murphy, Company, a Pennsylvania Corporation, Appellees.
No. 82-231.
District Court of Appeal of Florida, Third District.
December 28, 1982.
*992 Jose R. Garcia-Pedrosa, City Atty. and Mikele S. Carter, Asst. City Atty., for appellant.
Roberts, Baggett, LaFace, Richard & Wiser and Barry Richard, Tallahassee, for appellees.
Before HENDRY, BASKIN and JORGENSON, JJ.
BASKIN, Judge.
The City of Miami appeals from an amended final judgment entered in a class action.[1] A group of merchants filed a lawsuit to recover excess payments of occupational license taxes. They contended that City of Miami Ordinance 9188 violated section 205.043, Florida Statutes (Supp. 1980), which permits cities to increase occupational license taxes up to 100% over the 1971 level with regard to businesses for which the tax was $100 or less; up to 50% for businesses for which the tax fell between $101 and $300; and up to 25% for businesses for which the tax was greater than $300. The trial court agreed and ruled that the ordinance violated section 205.043, Florida Statutes (Supp. 1980) to the extent that the ordinance raised occupational license taxes 100% without regard to the 1971 taxes paid by merchants. The court required the City to reimburse merchants for 1980-81 and 1981-82 occupational license tax overpayments and to pay the merchants' attorneys a sum equal to one-third of the gross amount of reimbursement for 1980-1982.
The City contests the reimbursement to those taxpayers who failed to protest their tax payments. In addition, the City challenges the requirement that it pay attorneys' fees on behalf of taxpayers who receive no benefit because they cannot be located.
Concerning the necessity for protest, the merchants assert that they paid the taxes under statutory mandate subjecting them to substantial sanctions[2] in the event they *993 failed to comply. They contend that, accordingly, their taxes were paid involuntarily and they were not required to protest. As to attorneys' fees, the merchants raise the City's failure to present the issue to the trial court. We are asked to decide whether taxpayers who failed to protest their taxes at time of payment may recover excess occupational license taxes paid pursuant to city ordinance and whether the City must pay attorneys' fees on behalf of those taxpayers who are not reimbursed. We affirm.
We turn first to the need to protest. A taxpayer is entitled to a refund of taxes paid pursuant to an unlawful assessment, Coe v. Broward County, 358 So.2d 214 (Fla. 4th DCA 1978), but voluntary payment of an illegal tax prevents the taxpayer from obtaining a refund. Broward County v. Mattel, 397 So.2d 457 (Fla. 4th DCA 1981). In Mattel, the court stated: "Contrary to appellant's contention, no statutory provision authorizing a refund is necessary for the taxpayer to obtain a refund where payment of an illegal tax is involuntary. 31A Fla.Jur.2d, Taxation § 887." Id. at 459. Thus, whether taxpayers who failed to protest may obtain a refund depends on whether the excessive tax was paid voluntarily or involuntarily. The Mattel court reasoned that the threat that sanctions would be imposed if license taxes were not paid rendered the payment of the illegal tax involuntary and that recovery was available despite the absence of protest. Here, as in Mattel, the tax under consideration was unlawfully assessed, nonpayment subjected taxpayers to severe sanctions, and, accordingly, payment was involuntary.
The City relies primarily on Ingraham v. City of Miami, 388 So.2d 305 (Fla. 3d DCA 1980) and Willig v. Blake, 358 So.2d 871 (Fla. 3d DCA 1978) to support its assertion that the taxpayer must protest an illegal tax in order to receive a refund. In our view, those cases do not decide the issues before us. In Willig, the court considered the sufficiency of notice to the tax collector of a contest under section 194.171, Florida Statutes (1975), governing ad valorem taxation. The basis for the Willig protest requirement was the principle that when the legislature has created a procedure whereby a taxpayer is permitted to pay only that portion of the tax he admits in good faith to be owing, any payment made in excess of that amount must be deemed voluntary. Because he failed to protest in a timely fashion and because he failed to follow the procedure described in the statute, Willig did not prevail. Those circumstances do not appear in the case before us.
Similarly, Ingraham does not resolve the issue before us. Ingraham did not hold that protest is required before a taxpayer may obtain a refund of illegal taxes. Instead, the court ruled that the tax under consideration was valid. Thus, Ingraham's reference in dictum to the need to protest when seeking a refund depends, we glean from its citation to Willig, upon the assumption that the taxes were paid voluntarily. Here, we reiterate, excess taxes were paid involuntarily. Whether the time has come to abandon the myth that any taxes may be considered to have been paid voluntarily when no statutory scheme similar to the one in Willig is provided, we need not decide at this time. In accordance with the foregoing authorities, as explained, we therefore hold that the involuntary payment of an invalid tax, which has been promulgated without an authorized procedure for protest, presents no bar to recovery by a taxpayer who has paid without protest.
We affirm the award of attorneys' fees predicated upon the benefit obtained for class members by the attorneys. Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp., 487 F.2d 161 (3d Cir.1973); see Mills v. Electric Auto-Lite Co., 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970). That benefit included not only reimbursement of funds, but removal of the threat of criminal prosecution as well.
Affirmed.
NOTES
[1] The court certified the class as "consisting of all retail merchants who paid occupational license taxes to the City of Miami in the year 1979 in excess of $100 and who paid or were charged an occupational license tax for the year 1980." Florida Retail Federation, Inc. entered a voluntary dismissal during the proceedings.
[2] Nonpayment of the occupational license tax subjects the taxpayer to a daily $500 fine and 60 days in prison, as well as to civil penalties. § 3(aa) Charter of the City of Miami (1980); § 1-6 Code of the City of Miami (1980).