GLICKSTEIN, Judge.
This is an appeal by a condominium association from a final judgment entered against it in favor of the Broward County Property Appraiser, granting appellee’s motion for judgment on the pleadings. We reverse and remand.
In Wittington Condominium, Apartments, Inc. v. Braemar Corporation, 313 So.2d 463 (Fla. 4th DCA 1975), this court recognized that for the purpose of a defendant’s motion for judgment on the pleadings well pled allegations in the complaint are taken to be true. Here, the association alleged in its complaint that two lots were common elements. The parties agreed at oral argument that if the lots were common elements, the association should not have been assessed, the property appraiser recognizing that in such instance, the individual unit owners would be assessed proportionately as part of the assessment upon their respective units in the condominium pursuant to section 718.-120(1), Florida Statutes (1981) which provides:
Ad valorem taxes and special assessments by taxing authorities shall be assessed against the condominium parcels and not upon the condominium property as a whole. Each condominium parcel shall be separately assessed for ad valo-rem taxes and special assessments as a single parcel. The taxes and special assessments levied against each condominium parcel shall constitute a lien only upon the condominium parcel assessed and upon no other portion of the condominium property.
It was the property appraiser’s position, however, that the complaint goes on to refer to the original recorded Declaration of Condominium, which does not reflect the *424 two lots as being part of the condominium property. Therefore the trial court properly granted his motion for judgment on the pleadings.
Had this matter been before the trial court on motion for summary judgment where appellant would have been put to its proof, we could see the justness of appellee’s position. Summary judgment separates the fisherman from the bait cutter. This case is most appropriate for disposition by summary judgment if, in fact, there was non-compliance by appellant with the requirements of sections 718.110(3) and (6), Florida Statutes (1981).[1] In the absence of an amendment to the declaration of condominium duly recorded prior to the filing of the present action, such absence would establish that the two lots were not common elements, assuming the original recorded declaration does not include them, as apparently it does not.
The reason given by the trial court for granting appellee’s motion for judgment on the pleadings was that it “found” that the association had not paid its taxes under protest “or to follow the provisions of Section 194.171(3), F.S. and tender to the Revenue Collector the amount of taxes which are claimed in good faith to be due.” It undoubtedly relied upon the opinion in Willig v. Blake, 358 So.2d 871 (Fla. 3d DCA 1978), cited by appellee in its pleadings; but that case is poles apart from the present case in several respects. First, it went off on summary judgment, not judgment on the pleadings. Second, the record there showed the tax collector was not made aware of the fact that the taxpayer simultaneously filed a lawsuit and paid his taxes. In this case, the taxpayer association not only denied the property appraiser’s affirmative defense of payment without protest but also detailed proceedings before the Property Appraisal Adjustment Board. In Willig, the court said:
If the taxpayer takes it upon himself to depart from the statutory scheme, then he is under an obligation to put the Tax Collector on actual notice that he is contesting the taxes paid. In the instant case, there was no actual notice of protest given to the Tax Collector at the time the taxes were paid. Therefore, the payment of the taxes in full without proper protest gave rise to appellees’ complete affirmative defense upon which the trial court granted summary final judgment in their favor. See State ex rel. Victor Chemical Works v. Gay, 74 So.2d 560 (Fla.1954); North Miami v. Seaway Corp., 151 Fla. 301, 9 So.2d 705 (1942); and Tietig v. Dade County, 214 So.2d 634 (Fla. 3d DCA 1968).
There is nothing in Willig to suggest that the taxpayer went through the administrative process as did the association. Moreover, the Revenue Collector of Broward County has never filed an answer in the trial court, alleging an absence of actual notice on his part; nor has the property appraiser made such allegation as an affirmative defense. The former official filed a motion to dismiss, apparently still pending, which merely asserted the association’s failure to allege payment under protest, as did the property appraiser’s affirmative defenses. Wittington would logically suggest that this issue of notice be resolved on summary judgment, not judgment on the pleadings.
Further, we are not completely satisfied with the invulnerability of the “no protest” and “notice” theories, although we do not feel compelled to reach a definitive stand *425 on those points in the present posture of the case. On remand we hope the parties’ research fully analyzes for the benefit of the trial court — and ultimately for this court — the reasons, if any, which justify the necessity of protest or of notice on the one hand versus the alternative notion of involuntariness. We call to the parties’ attention the decision of the supreme court in North Miami v. Seaway Corporation, 151 Fla. 301, 9 So.2d 705 (1942).
Seaway Corporation concerned appel-lee’s attempt to recover taxes it had paid on property not within the jurisdiction of the levying municipality. The supreme court said in part:
The right of a taxpayer to recover taxes paid, where the tax is illegal, is more or less involved and the decisions are in conflict.
[[Image here]]
Every man is supposed to know the law, and if he voluntarily makes a payment which the law would not compel him to make, he cannot afterwards assign his ignorance of the law as a reason why the State should furnish him with legal remedies to recover it. Ignorance or mistake of the law by one who voluntarily pays a tax illegally assessed furnishes no ground for a recovery. See . Cooley on Taxation, Vol. 3, (4th Ed.), page 2565, par. 1282.
All payments are presumed to be voluntary until the contrary is made to appear. [Emphasis added.]
Id. at 306, 9 So.2d at 707. Note that the supreme court did not say that the only way to show involuntariness of the payment is by protesting to the collector at time of payment. Rather, the court went on to give examples, chiefly from Cooley, of circumstances in which payments are voluntary and circumstances in which payments are involuntary. Thus, unless payment was made to save arrest or the sale or seizure of goods, mere protest at time of payment did not alter the voluntariness of the payment; payment in advance in order to obtain a discount was voluntary, but payment to avoid onerous penalties was involuntary. Id. at 306-07, 9 So.2d at 707. Payment pursuant to a bargain or compromise was voluntary, but payment under a mistake of fact was involuntary. Id. at 307, 9 So.2d at 707. The supreme court did take particular note of Union Pacific Railroad Company v. Commissioners, 98 U.S. 541, 25 L.Ed. 196 (1879) wherein a railroad that paid in full delinquent taxes while making a general protest against their legality and giving notice it would commence suit to recover was held to have paid involuntarily. In Seaway Corporation plaintiff’s payment was found to have been voluntary, because the payment had been made on a compromise.
We glean from Seaway Corporation that the notion that protest must accompany payment if the taxpayer is to be permitted to seek a refund is far from sacrosanct in Florida case law as set out by the supreme court. Seaway Corporation appears rather to say that the key is volun-tariness or involuntariness of the payment. It would thus be possible to say in the instant case that the association made clear the involuntariness of its payment by having first raised an appeal before the Adjustment Board; or, alternatively, that the true rule pertains to voluntariness rather than particular notice, and that the trial court should determine whether the association’s payment was voluntary.
Further authority for such suggestion is found in this court’s decision in Broward County v. Mattel, 397 So.2d 457 (Fla. 4th DCA 1981) which met — head on — the necessity for protest of an illegal tax under certain circumstances and held that protest was unnecessary if payment was made involuntarily. It further held that:
[a] payment of a tax is deemed involuntary where the penalty exacted for nonpayment is so severe that it constitutes coercion or duress. [Citations omitted.]
Id. at 460. On remand the court should give the parties the opportunity to make such amendments to the pleadings as the facts warrant in light of the foregoing.
*426 Finally, to go to the end of-the line, there is yet another question if the whole notion of voluntariness is obsolete.
It is clear that section 195.106 of the Florida Statutes (1981) (renumbered in 1982 as section 197.0138) does not in terms authorize the courts to entertain suits of the instant kind whether payment of the taxes was voluntary or involuntary. The section states in part:
(l)(a) Except as provided in paragraph (b), the Department of Revenue shall pass upon and order refunds when payment has been made voluntarily or involuntarily of taxes assessed on the county tax rolls by reason of any of the following circumstances:
1. Any overpayment.
2. Payment when no tax was due.
3. When a bona fide controversy exists between the tax collector and the taxpayer as to the liability of the taxpayer for the payment of the tax claimed to be due, the taxpayer pays the amount claimed by the tax collector to be due, and it is finally adjudged by a court of competent jurisdiction that the taxpayer was not liable for the payment of the tax or any part thereof.
4. Any payment made in error by a taxpayer to the tax collector, provided that, within 24 months of the date of the erroneous payment and prior to any transfer of the assessed property to a third party for consideration, the party seeking a refund makes demand for reimbursement of the erroneous payment upon the owner of the property on which the taxes were erroneously paid and reimbursement of the erroneous payment is not received within 45 days of such demand. The demand for reimbursement shall be sent by certified mail, return receipt requested, and a copy thereof shall be sent to the tax collector.
(b) Those refunds which have been ordered by a court and those refunds which do not result from changes made in the assessed value on a tax roll certified to the tax collector shall be made directly by the tax collector without order from the department and from undistributed funds without approval of the various taxing authorities.
Clearly the statute sets forth a particular authority given the Department of Revenue and does not state the circuit court may do likewise. Nor does it state the circuit court may not do likewise. The fact the Department of Revenue is empowered to order county and municipal tax refunds whether the payment was made voluntarily or involuntarily raises the question whether the hoary and virtually ubiquitous court-made rule that payment under protest is a prerequisite to standing to sue remains viable. In particular circumstances, section 194.171 already provides an alternative.
The rationale behind the court-made rule evidently was that the county or other taxing authority needed notice that a refund might eventuate, so that it could put the disputed amount into a suspense account rather than spend it. See 72 American Jurisprudence Second State and Local Taxation § 1078 (1974). That rationale may not hold up in 1983 if the evidence reflects no such accounts to exist. More important, we find it anomalous that any individual, alone or in association, should be wronged by the state without recourse. This nation is an island of guaranteed life, liberty and property rights in a sea of repressive states.
GOLDMAN, MURRAY, Associate Judge, concurs.
WALDEN, J., dissents with opinion.

. These provide:
(3) An amendment of a declaration is effective when properly recorded in the public records of the county where the declaration is recorded.
[[Image here]]
(6) The common elements designated by the declaration may be enlarged by an amendment to the declaration. The amendment must describe the interest in the property and must submit the property to the terms of the declaration. The amendment must be approved and executed as provided in this section. The amendment divests the association of title to the land and vests title in the unit owners as part of the common elements, without naming them and without further conveyance, in the same proportion as the undivided shares in the common elements that are appurtenant to the unit owned by them.